**The UNITED STATES, Appellant,**

v.

**UNIROYAL, INC., Appellee.**

**No. 82–9.**

United States Court of Customs and Patent Appeals.

Sept. 2, 1982.

---

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, New York City, Attorney-in-Charge, and Barbara M. Epstein, New York City, for appellant.

Andrew P. Vance and Richard Haroian, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

BALDWIN, Judge.

This is an interlocutory appeal from a judgment of the United States Court of International Trade, 2 CIT ——, 529 F.Supp. 661 (1981), in which the Court of International Trade denied a motion to dismiss an action challenging a Customs Service ruling issued in response to a request by Uniroyal for internal advice under 19 CFR 177.11.[1] The Court of International Trade, at the government's request, certified the issue of whether it had subject matter jurisdiction in this case. We reverse and remand, with instructions to dismiss for lack of jurisdiction.

### Background

Uniroyal, an importer of leather uppers and rubber soles for shoes, received six "Notices of Redelivery,"[2] all dated before April 29, 1980, each concerning a separate entry of merchandise made between January and April of 1980. On March 4, 1980, ten days after the date of the third such notice, Uniroyal filed a "request for internal advice" under 19 CFR 177.11 with the Regional Commissioner of Customs, New York. Uniroyal urged that the imported shoe parts in question need not be marked

---

1. 19 CFR 177.11(a) states, *inter alia*, that "(a)dvice or guidance as to the interpretation or proper application of the Customs or related laws with respect to a specific Customs transaction may be requested by Customs Service field offices from the Headquarters Office at any time, whether the transaction is prospective, current, or completed."

2. 19 CFR 134.51(a) provides:

(a) *Notice to mark or redeliver.* When articles or containers are found upon examination not to be legally marked, the district director shall notify the importer on Customs Form 4647 to arrange with the district director's office to properly mark the article or containers, or to return all released articles to Customs custody for marking, exportation, or destruction.

with the country of origin (Indonesia), because the "ultimate purchaser" exception of 19 U.S.C. § 1304 applied.[3] Until Customs Headquarters rejected Uniroyal's argument some 16 months later, in a ruling dated July 2, 1981, appellant apparently took no further action regarding the involved Notices of Redelivery.

### Proceedings in the Trial Court

After receiving the adverse ruling, Uniroyal brought an action in the Court of International Trade for declaratory and injunctive relief, alleging that Customs Headquarters had erred in requiring that the imported uppers and soles carry "Made in Indonesia" markings. In its complaint, Uniroyal stated that the trial court had exclusive jurisdiction "by virtue of the provisions of 28 U.S.C. § 1581(i)."[4] The government, however, argued that demands for redelivery were protestable during the

relevant time period,[5] and that, consequently, Uniroyal was restricted to the filing of a protest (and the appeal from a denial of such a protest) as the means for invoking the jurisdiction of the Court of International Trade under 28 U.S.C. § 1581(a).[6] Therefore, the government moved to dismiss the action for lack of jurisdiction, Uniroyal having filed no protest.

The trial court, while agreeing with the government that the demands for redelivery had been protestable, cited *Wear Me Apparel Corp. v. United States*, 1 CIT —, —, 511 F.Supp. 814, 817 (1981), for the proposition that § 1581(i), unlike § 1581(a), does not require the filing and denial of a protest as a prerequisite for the trial court's exercising its jurisdiction. Moreover, the trial court characterized the filing of a protest by Uniroyal as "purposeless" in light of the extant ruling under 19 CFR 177.11. Hence, Uniroyal was not required to exhaust administrative remedies in satisfac-

---

3. The relevant portions of § 1304 read as follows:

(a) Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) thereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

\* \* \* \* \* \*

(3) Authorize the exception of any article from the requirements of markings if—

\* \* \* \* \* \*

(H) An ultimate purchaser, by reason of the character of such article or by reason of the circumstances of its importation, must necessarily know the country of origin of such article even though it is not marked to indicate its origin.

4. 28 U.S.C. § 1581(i) provides:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

5. When the demands for redelivery at issue were made, 19 U.S.C. § 1514(a) (1979) did not specifically include such demands among the Customs Service decisions that were final unless subject to a timely protest. *But see Wear Me Apparel Corp. v. United States*, 1 CIT —, Slip Op. 80–13 (Dec. 15, 1980) (demands for redelivery deemed indistinguishable from protestable decisions to exclude merchandise from entry). However, effective November 1, 1980, § 1514(a)(4) expressly provided for the protest of "a demand for redelivery to customs custody under any provision of the customs laws." 19 U.S.C. § 1514(a)(4) (1980).

6. 28 U.S.C. § 1581(a) provides that:

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

tion of 28 U.S.C. § 2637(d).[7] Accordingly, the trial court denied the motion to dismiss, but on reconsideration granted the government's request that the jurisdiction issue be certified here for interlocutory appeal pursuant to 28 U.S.C. § 1541(b).

## OPINION

Since we hold that the trial court lacked jurisdiction, regardless of whether demands for redelivery per se were protestable prior to the 1980 amendment of 19 U.S.C. § 1514(a)(4), we will initially adopt, for exposition purposes, Uniroyal's position that such demands in fact were not protestable under the old law.[8] From this premise, we conclude upon review of the legislative history of 28 U.S.C. § 1581 that Uniroyal cannot obtain judicial review regarding the six completed import transactions, since a protest-related review procedure remains available for resolving the marking issue. In addition, we conclude that Uniroyal has not invoked the jurisdiction of the Court of International Trade with regard to prospective importations of similar merchandise.

### Relief Sought by Uniroyal

Uniroyal's concern over the impact of the "internal advice" ruling on its rights and liabilities takes two forms. First, Uniroyal fears that, at some time in the future, it will be subject to marking duties, liquidated damages, and, perhaps, a penalty under 19 U.S.C. § 1592, all stemming from the import transactions already completed. Second, Uniroyal is concerned about the fate of current and planned shipments of unmarked uppers and soles, in light of the implication of the Customs Headquarters ruling that such shipments may be barred from entry.

Uniroyal concedes that it could address the marking issue in a protest, should the Customs Service assess marking duties or liquidated damages as a result of Uniroyal's failure to redeliver the unmarked merchandise, and that an appeal of a denial of such a protest could then be effected under 28 U.S.C. § 1581(a).[9] However, Uniroyal argues that "an action concerning the propriety of requiring country of origin marking is encompassed within the broad jurisdictional parameters" of § 1581(i), thereby allowing the Court of International Trade to exercise its discretionary authority under 28 U.S.C. § 2643(c)(1) to grant Uniroyal declaratory relief from any further assessments. According to Uniroyal, this route to declaratory judgment is preferable to the alternative of appealing the denial of a protest, since the latter process would "not enable a prompt resolution of the controversy * * *

---

7. Section 2637(d) (1980) states that "[i]n any action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."

8. *See* note 16 and accompanying text *infra.* The question of whether demands for redelivery were protestable prior to November 1, 1980, is not easily resolved. The Court of International Trade has concluded that they were, reasoning that a demand for redelivery is really no different than a protestable decision to exclude merchandise. *Wear Me Apparel Corp. v. United States,* 1 CIT —, Slip Op. 80–13 (Dec. 15, 1980). However, the Congress, in amending 19 U.S.C. § 1514(a) to render demands for redelivery protestable, indicated that the amendment "expanded" the jurisdiction of the Court of International Trade. *See, e.g.,* H.R.Rep.No. 1235, 96th Cong., 2d Sess. 68 (1980), U.S.Code Cong. & Admin.News 1980, p.

3729. Moreover, Customs Headquarters agreed to render a ruling under 19 CFR 177.11 in this case, even though such a ruling would be precluded as to "questions [that] can subsequently be raised by the importer * * * in the form of a protest." 19 CFR 177.11(b)(5).

9. Similarly, government counsel indicated during oral argument that Uniroyal could obtain judicial review of the Customs Service's disposition of the "ultimate purchaser" question by "protesting the demand for redelivery, or * * * [by] protesting the refusal of the Customs Service [upon redelivery] to allow delivery of the merchandise * * *, or * * * [by protesting] the assessment of marking duties * * * if they were assessed, or * * * [by protesting] the assessment of liquidated damages," when and if they were assessed. Thus, there is apparently no controversy between the parties on this aspect of the case.

[and would] force Uniroyal either to proceed at its peril with regard to future entries or to succumb to the Government's interpretation and thus be denied * * * the opportunity of judicial review."

*Legislative History of the "Residual Jurisdiction" Provision of 28 U.S.C. § 1581*

 Nevertheless, the legislative history of the Customs Courts Act of 1980 demonstrates that Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service. Both the immediate predecessors in the House and Senate to the bill that became the Customs Courts Act of 1980 contained a section delimiting the scope of a broad "catch-all" jurisdictional provision somewhat like § 1581(i). In effect, these restrictive sections granted the Court of International Trade jurisdiction to review a ruling issued without the prior filing and denial of a protest only when the party seeking review could show "irreparable harm" (or, in the Senate version, "commercial impracticability") in having to wait and file a protest against later Customs actions based on the ruling.[10]

During hearings on the predecessor bills, representatives of the Association of the Customs Bar testified in favor of providing for judicial review of "final" administrative rulings that effectively precluded importation.[11] However, there was also substantial testimony by enforcement officials against allowing appeal from a ruling prior to an actual importation, the denial of a protest regarding that importation, and the payment of assessed duties as a prerequisite to filing a civil action.[12]

The bill finally enacted into law did not contain the restrictive provision qualifying the "residual" jurisdiction of the Court of International Trade under § 1581(i). Instead, a new section was inserted affirmatively ceding to the Court of International Trade exclusive jurisdiction "to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury * * *, but only if the [appealing] party * * * demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation." 28 U.S.C. § 1581(h) (1980). Thus, Congress, while providing in § 1581(h) for judicial review without the denial of a prior protest as to prospective importations, ultimately deleted from the bill the language of its predecessors which could be read as permitting such

10. S.1654, 96th Cong., 1st Sess. § 1581(i)(2) (1979); H.R. 6394, 96th Cong., 2d Sess. § 1581(j)(2) (1980).

11. For example, advice [from Customs Headquarters] on marking could be such as to effectively foreclose importation without an opportunity therefore, to test the validity of the "advice." The court should be available to a business man who wishes to contest the Customs Service's advice as to a marking requirement which would effectively foreclose importation and is arguably contrary to statutory or regulatory requirements.
*Customs Courts Act of 1979: Hearings on S.1654 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 96th Cong., 1st Sess. 48 (1979) (statement of Andrew P. Vance).

12. We strongly believe that this current method of obtaining review [via the filing of a protest] ought to be maintained. The keystone under existing law is the existence of an actual importation. It is essential for the

stability of the ruling process that the treatment of an actual importation be at issue, otherwise the court will be overburdened with hypothetical cases. Judicialization of the Customs informal ruling process will discourage it from providing useful guidance to the public. We also do not believe the Congress would want the new Court of International Trade to replace the administrative agency now assigned the ruling responsibility. In addition, very few importers would import merchandise, protest and pay the duties in order to challenge Customs Service treatment of certain merchandise if they could obtain judicial review without an actual importation and without the payment of duties.
*Customs Courts Act of 1980: Hearings on H.R. 6394 Before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary*, 96th Cong., 2d Sess. 40 (1980) (statement of Richard J. Davis, Asst. Treasury Secretary (Enforcement & Operations)).

review when the transaction in question had already taken place.[13]

### Conclusion

■ In light of the foregoing, we conclude that Uniroyal's effort to obtain judicial review of the "internal advice" ruling regarding marking must fail.[14] The jurisdiction of the Court of International Trade under § 1581(i) is expressly "in addition to the jurisdiction conferred * * * by subsections (a)–(h)," and the legislative history of § 1581 further evidences Congress' intention that subsection (i) not be used generally to bypass administrative review by meaningful protest.[15] Accordingly, Uniroyal's concern over anticipated assessments arising from the six completed entries must be addressed by means of timely protests filed when and if such assessments are made, as Congress intended.[16] In addition, to the extent that Uniroyal's prayer for relief is directed to future importations of uppers and soles, Uniroyal has not demonstrated the "irreparable harm" Congress has required before the trial court can exercise jurisdiction over an appeal of a ruling prior to the importation of goods and the filing and denial of a protest.[17]

The judgment of the United States Court of International Trade is, therefore, *reversed*. The case is hereby *remanded* for the vacating of the trial court's Memorandum and Order of December 4, 1981, and the dismissal of Uniroyal's action.

REVERSED AND REMANDED.

NIES, Judge, concurring.

I concur in the majority view that the Court of International Trade does not have jurisdiction under 28 U.S.C. § 1581(i) over the subject complaint. However, in my view, the statement of the case in the majority opinion omits a number of significant points which require a different analysis of the issues.

Most significantly, the majority perceives the question raised by the appeal as whether the Court of International Trade has jurisdiction under § 1581(i) to review an internal advice "ruling" (i.e., memorandum). This issue was not addressed by the court below nor is it a ground which appellee asserts in this appeal.[1] Appellee's posi-

---

13. Notably, Congress did not follow the suggestion by representatives of the American Importers Association that the Court of International Trade be given jurisdiction to review directly rulings relating "to potential as well as actual import transactions" when some standard of injury through delay was satisfied. *Customs Courts Act of 1979: Hearings on S.1654 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 96th Cong., 1st Sess. 79 (1979) (statement by John B. Pellegrini & Barry Nemmers).

14. The only error averred by Uniroyal in its complaint before the Court of International Trade was that "Customs Headquarters erred in holding [in its ruling] that the uppers and soles are required to be marked with the country of origin." In its brief to this court, Uniroyal stated that it "sought declaratory relief * * * with regard to a Customs Headquarters ruling * * * which would apply not only to the entries * * * covered by the * * * Notices of Redelivery but also to all future entries of such merchandise by whomsoever imported." During oral argument, Uniroyal's counsel stated that "what there is [before this court] is a ruling * * * which we have sought to have reviewed * * * in a declaratory judgment ac-

tion." Accordingly, Uniroyal is understood to be seeking relief from both the past and prospective impact of the Customs Service ruling and, therefore, to be challenging the ruling *per se*.

15. As the concurring opinion indicates, this construction of § 1581(i) is consistent with pre-1980 precedent from the district courts.

16. If the notices of redelivery in this case were protestable during the relevant time period, it still follows from our rationale that Uniroyal would have had to avail itself of the opportunity for protest and denial of protest before the jurisdiction of the trial court could be invoked. In this regard, we decline to follow Uniroyal's suggestion that its request for internal advice itself be deemed a protest to the Customs Service's decision to issue the Notices of Redelivery.

17. We express no opinion on whether a ruling under 19 CFR 177.11 could ever constitute a "ruling" within the meaning of 28 U.S.C. § 1581(h).

1. Legislative history indicates, in any event, that no direct review of "internal advice" was

tion is that § 1581(i) may be utilized instead of § 1581(a) to obtain a declaratory judgment that certain imported merchandise, identified by entry numbers in its complaint, is excepted from the marking requirements of 19 U.S.C. § 1304. As with any other decision, the judicial determination would also apply to future importations of the same type of merchandise. Thus, the thrust of the complaint, even though it mentions that appellant anticipates additional shipments, is no different from a complaint following the denial of a protest. Alternatively, appellee urges that the internal advice request be deemed a protest.

### Background

Uniroyal, Inc., (Uniroyal), an importer of leather uppers and rubber soles for shoes, received "Notices of Redelivery"[2] concerning two entries of merchandise which had been entered at New York on January 21 and 23, 1980. The Customs Service ordered that the imported merchandise (identified as "footwear") be marked with the country of origin, "Indonesia." On March 4, 1980, Uniroyal's attorneys submitted a formal statement to the Regional Commissioner of Customs, New York, controverting the marking requirement with respect to the leather *uppers* of the first two notices, Entry Nos. 615934 and 615975, and requested that the official seek internal advice in accordance with 19 CFR 177.11[3] if Uniroyal's position were not accepted.

Pursuant to Uniroyal's request, the Regional Commissioner did seek internal advice and Customs Headquarters issued a memorandum in response on July 2, 1981, holding:

> Customs requires that the imported lasted leather uppers *and soles* be marked individually with the country of origin according to the provisions of 19 U.S.C. § 1304.

[Emphasis added.][4]

In the interim Uniroyal had received four additional Notices of Redelivery on April 10 and April 18, 1980, with respect to importation of uppers only, and on February 20, 1980 and March 5, 1980, with respect to uppers and soles. Uniroyal did not redeliver or mark any of the merchandise covered by these entries nor file any protests within the statutory period.[5]

On August 28, 1981, Uniroyal brought this declaratory judgment action in the

---

intended under § 1581. H.R.Rep.No. 96–1235, 96th Cong., 2d Sess. 46, *reprinted in* [1980] U.S.Code Cong. & Ad.News 3729, 3758, states in this regard:

> The time-honored rule is that the court does not possess jurisdiction to review a ruling or a refusal to issue or change a ruling by the Secretary of the Treasury unless it relates to a subject matter presently within the jurisdiction of the United States Customs Court, for example, an action brought pursuant to section 515 of the Tariff Act of 1930. The Committee intends a very narrow and limited exception to this rule. The word "ruling" is defined to apply to a determination by the Secretary of the Treasury as to the manner in which it will treat the contemplated transaction. *In determining the scope of the definition of a "ruling," the Committee does not intend to include "internal advice" or a request for "further review," both of which relate to completed import transactions.* [Emphasis added.]

2. 19 CFR 134.51(a) provides:

> (a) **Notice to mark or redeliver.** When articles or containers are found upon examination not to be legally marked, the district director shall notify the importer on Customs

Form 4647 to arrange with the district director's office to properly mark the article or containers, or to return all released articles to Customs custody for marking, exportation, or destruction.

3. 19 CFR 177.11(b)(2) states:

> (2) **When no ruling has been issued.** Internal advice will be sought by a Customs Service field office with respect to a current transaction for which no ruling was requested or issued under the provisions of this part whenever a difference of opinion exists as to the interpretation or proper application of the Customs and related laws to the transaction, and the field office is requested to seek such advice by an importer or other person who would have been entitled, under § 177.1(c), to request a ruling with respect to the transaction, while prospective.

4. Apparently the Regional Director sought advice of a broader scope than Uniroyal had requested, i.e., with respect to soles as well.

5. Under 19 U.S.C. § 1514(c)(2), a protest would have been required within 90 days of the date of the decision as to which protest is made.

Court of International Trade, asking the court to "hold that the imported uppers and soles do not have to be marked with the country of origin and order the appropriate Customs officials to cancel all 'Notices of Redelivery' covering the imported uppers and soles." Subsequently, Uniroyal sought a preliminary injunction (which was denied) against issuance of any additional Notices by Customs with respect to other entries of such goods which had been made by Uniroyal (apparently there were 31 other entries) and against the assessment of any marking duties or liquidated damages.

### The Decision of the Court Below

The court below held that a Notice to Redeliver merchandise was, in effect, a decision to exclude merchandise from entry or delivery, and, therefore, was protestable under 19 U.S.C. § 1514(a)(4), citing *Wear Me Apparel Corp. v. United States*, 1 CIT ——, Slip Op. 80–13 (December 15, 1980).[6] The court, nevertheless, concluded that no legitimate interest of the United States would be served by requiring Uniroyal to file a protest in this case since the decision in the request for internal advice would be controlling authority governing its disposition. The court concluded that litigants must generally obtain a denied protest before seeking judicial review and cannot avoid the requirements by filing a request for internal advice. However, noting that the Headquarters office may, under its regulations, refuse to consider a question raised in a request for internal advice,[7] the court stated:

> Thus, where Customs declines to provide internal advice, a litigant will normally be required to obtain a denied protest.

Here, however, where Customs elected to furnish dispositive advice and did not rely upon its own regulation permitting it to withhold such advice in favor of having a protest filed, the court sees no reason why a denied protest should now be required of plaintiff.

### OPINION

The analysis of the court indicates it is treating the denial of a protest as a somewhat discretionary matter comparable to the requirement of exhaustion of administrative remedies. Contrary to the court's view, there could be no question of *now* requiring Uniroyal to protest the Notices, inasmuch as the time has long expired for such action. It is apparent that the court failed to take into account the additional provisions of 19 U.S.C. § 1514 (n.6, supra) which make any protestable decision final and conclusive unless a protest is filed. By holding that the Notices were protestable, the court had no alternative but to dismiss the complaint on the ground that any decision with respect to the specific entries which are the subject of this appeal had become final. The court's rationale that a protest now would be "purposeless" overlooks the inexorable operation of 15 U.S.C. § 1514 with respect to both time limitations and finality in the absence of a protest. The act of the Customs Headquarters Office in taking up a request for internal advice could not delay or upset the statutorily imposed finality of the Notices, assuming the Notices were protestable.

Thus, the key issue, and one of the principal issues discussed by the parties in their

---

**6.** At the time the Notices were made, 19 U.S.C. § 1514(a)(4) provided, with exceptions not pertinent here:

[D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

\* \* \* \* \* \*

(4) The exclusion of merchandise from entry or delivery under any provision of the customs law

\* \* \* \* \* \*

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court in accordance with section 2632 of Title 28 of the United States Code within the time prescribed by section 2631 of that title.

**7.** 19 CFR 177.11(b)(5).

briefs on appeal, is whether Notices were protestable prior to November 1, 1980, when, by amendment to § 1514(c), "demand for redelivery" was inserted among the list of "decisions" subject to protest procedure. On this issue, I am persuaded by appellee's argument, based on the legislative history [8] and the absence of any judicial precedent prior to the amendment, that such Notices of Redelivery were not protestable at the time the Notices were received by appellee. Accordingly, appellee's claims have not been wholly extinguished as argued by the Government. Rather, as the majority opinion indicates, if demands for duties and/or damages are made, Uniroyal may then protest under 19 U.S.C. § 1514 wherein all issues, including the correctness of the marking requirement as applied to each of the subject importations, may be raised.

Appellee's argument that as a matter of convenience and efficiency it should be allowed to proceed under 28 U.S.C. § 1581(i) at this time is not equally persuasive. Section 1581(i) provides jurisdiction "*in addition to* the jurisdiction conferred ... by § 1581(a)–(h)" (emphasis added) and may not be construed as an all embracing alternative remedy to those sections. In my view the broad subject matter jurisdiction of the court under § 1581(i) may be invoked only when no other remedy is available or the remedies provided under other provisions of 28 U.S.C. § 1581 are manifestly inadequate.[9] Here, § 1581(a) will be available with respect to past transactions if the Government demands further duties and/or damages, and § 1581(h) may be utilized with respect to prospective transactions. Unless inadequate as a matter of due proc-

ess, a challenge not made here, appellee must utilize the exclusive remedies provided by Congress.

Even if the demands were protestable, as held by the court below, Uniroyal's belief that it had no remedy under § 1581(a) would not make that remedy inadequate. Uniroyal simply made no attempt to utilize it. With respect to Uniroyal's argument that its request for internal advice should be deemed a protest "to the decision of Customs officials to issue Notices of Redelivery," the recitation of facts concerning the various dates of entries, the goods involved, the date of the request, and the scope of Headquarter's response, indicate to me that such a holding would be totally disruptive of orderly administrative procedures. While this court has taken a generally liberal view in construing the requirements of 19 U.S.C. § 1514 as to the form and content of protests in cases where it is apparent that a party has inartfully attempted to protest a decision, in this case it is clear that appellee was not attempting to follow protest procedure. Accordingly, I also find no basis for alternative jurisdiction of this complaint under § 1581(a).

**8.** H.R.Rep.No. 96–1235, 96th Cong., 2d Sess. 44, *reprinted in* [1980] U.S.Code Cong. & Ad. News 3729, 3755; S.Rep.No. 96–466, 96th Cong., 1st Sess. (1979).

**9.** The precedent with respect to the exercise of jurisdiction by district courts, whose subject matter jurisdiction was transferred to the Court of International Trade by § 1581(i), generally reflects this standard. *Flintkote Co. v. Blumenthal*, 596 F.2d 51, 58 (CA 2 1979); *Jerlian Watch Co. v. U.S. Dept. of Commerce*, 597 F.2d 687 (CA 9 1979); *Sneaker Circus, Inc. v. Carter*, 566 F.2d 396, 399 (CA 2 1977); *Timken Co. v. Simon*, 176 App.D.C. 219, 224, 539 F.2d 221, 226 n.7 (1976). *See also United States Cane Sugar Refiners' Assn. v. Black*, 683 F.2d 399, 402 n.5 (Cust. & Pat.App.1982). That the controversy may not be ripe for review under § 1581(a) does not make the remedy inadequate. *Cf., J. C. Penney Co. v. U.S. Treasury Dept.*, 439 F.2d 63, 68 (CA 2), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971).