**AMERICAN AIR PARCEL FORWARDING COMPANY, LTD., a Hong Kong Corporation; and E.C. McAfee Company, a Michigan Corporation, for the Account of American Air Parcel Forwarding Company, Ltd., Appellants,**

v.

**UNITED STATES of America: the Secretary of the Treasury; United States Customs Service; the Commissioner of Customs, United States Customs Service; the Assistant Commissioner of Customs (Commercial Operations), United States Customs Service; Director Office of Regulations and Rulings, United States Customs Service; and District Director of Customs, United States Customs Service, Detroit, Michigan, Jointly and Severally, Appellees.**

**Appeal No. 83–716.**

United States Court of Appeals, Federal Circuit.

Oct. 14, 1983.

---

**12.** *See* note 3 *supra.*

Jonathan Miller, of Southfield, Mich., and Richard A. Kulics, of Centerline, Mich., argued for appellants.

Joseph I. Liebman, of New York City, argued for appellee. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Susan Handler-Menahem, New York City.

Before FRIEDMAN and NIES, Circuit Judges, and SKELTON, Senior Circuit Judge.

NIES, Circuit Judge.

This is an appeal from a final order of the United States Court of International Trade, 557 F.Supp. 605 (C.I.T.1983), dismissing an action in which appellant importers challenge the basis on which the United States Customs Service has made and is making its valuation of made-to-measure clothing produced in Hong Kong. The Court of International Trade held that jurisdiction over the action could not be founded on 28 U.S.C. § 1581(h) and (i) as asserted by the importers. We affirm.

### Background

American Air Parcel Forwarding Company, Ltd., a Hong Kong corporation, is a foreign freight consolidator which handled shipments from Hong Kong to the United States of made-to-measure clothing which is the subject of this action.

E.C. McAfee Company is a customshouse broker and is the importer of record of the 12 entries listed in an attachment to the pleadings.

The facts of the transactions are disputed by the parties and we will say only that the

subject clothing is custom made by tailors in Hong Kong for individual U.S. customers who order the merchandise in the United States through salesmen for Hong Kong distributors.

The present appeal stems from the efforts of appellants (collectively "importers") to bar the assessment of duty based on the sales price paid by the United States consumer (approximately $200.00). Importers assert that the valuation must be based on the payment in Hong Kong by the distributors to tailors for "cut, make and trim" operations plus the cost of material (approximately $75.00).

While only 12 specific entries are identified in an attachment to the pleadings, appellants assert that hundreds of additional unliquidated entries, as well as future importations, are the subject of the complaint. The complaint ·itself is couched in broad terms of seeking "review of the arbitrary and capricious revocation of a ruling issued by the U.S. Customs Service and the arbitrary and capricious refusal by that agency and its representatives to rescind that revocation." Jurisdiction is asserted under 28 U.S.C. § 1581(h) and (i)(4).[1]

With respect to the identified shipments, these entries were made in Detroit between March 3, 1980, and August 1, 1980, by McAfee, for the account of Air Parcel, who paid estimated duties based on the Hong Kong transactions. Air Parcel billed only this amount to the U.S. consumer in addition to the charge for the merchandise. Apparently other Customs field offices proposed to assess identical merchandise at the price paid by U.S. consumers on the ground that there was no "sale" in Hong Kong within the meaning of the applicable statute. In January 1980 the District Director of Detroit, Michigan, at the behest of the importers, initiated a request for internal advice from the Office of Regulation and Rulings. Based on representations by the importers as to the facts of the Hong Kong apparel trade, the response was made on October 17, 1980, with certain provisos, that:

> *Holding.*—On the basis of the information provided, it is our opinion that the sales between the tailors and distributors in Hong Kong of made-to-measure clothing are appropriate for establishing export value under the new law . . . .

This holding is denominated TAA # 10 and was published in the Customs Bulletin on March 11, 1981.

On March 12, 1981, the San Francisco District Director requested Customs Headquarters (Director, Classification and Value Division) to reconsider the holding in TAA # 10.

On July 23, 1981, the Customs Service issued a response to the request for reconsideration, affirming TAA # 10, but advising that an investigation to verify the facts upon which the ruling was based had been initiated.

1. 28 U.S.C. § 1581 provides in pertinent part:
§ 1581. Civil actions against the United States and agencies and officers thereof
* * * * * *
(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

In September 1981 the investigation was completed and the Office of Regulation and Rulings concluded that the trade patterns in the Hong Kong made-to-measure clothing industry conflicted with the pattern stated in the request for internal advice. On September 9, 1981, a telex was transmitted to Customs offices stating the above conclusion and requiring the assessment of duties on the basis of the price paid by the U.S. consumer.

On October 19, 1981, the Customs Service advised Air Parcel by letter that TAA # 10 was revoked pursuant to 19 CFR § 177.9(d) and that, pursuant to 19 CFR § 177.9(d)(2)(ii), the revocation was retroactive. This retroactive revocation is the heart of the controversy.

In November 1981 the 12 identified entries were liquidated with duties being assessed on the price paid by U.S. consumers. A protest was duly filed by McAfee on February 1, 1982. On February 4, 1982, no action having been taken on the protest and no payment having been made of liquidated duties, the importers filed a complaint in the Court of International Trade, followed by a motion for preliminary injunction seeking, *inter alia,* cancellation of these liquidations and reinstatement of TAA # 10. The Government moved to dismiss for lack of jurisdiction. The court denied the motion to dismiss and granted the motion for a preliminary injunction on August 31, 1982. Within a few days thereafter, the Court of Customs and Patent Appeals handed down a decision in *United States v. Uniroyal, Inc.,* 687 F.2d 467 (CCPA 1982), defining the scope of jurisdiction of the Court of International Trade under 28 U.S.C. § 1581(h) and (i). On the basis of this decision, the court granted the Government's renewed motion to dismiss and dissolved the injunction by order of January 19, 1983. The importers appeal from this order.

Importers allege that as a practical matter they are unable to collect additional duties from U.S. consumers after merchandise is delivered inasmuch as cost of collection exceeds the amount involved. Because of the revocation of TAA # 10, and the greatly increased duties it must pay on hundreds of entries, Air Parcel asserts that it has been driven into bankruptcy.

## I

The Court of International Trade, in holding that 28 U.S.C. § 1581(i) did not grant jurisdiction to the court over the complaint, provided the following analysis:

Reviewing 28 U.S.C. § 1581(i), frequently referred to as the residual or "catch-all" jurisdiction provision, the court finds no legislative intent to grant a litigant use of this forum where the litigant has failed to exhaust the avenue of protest and denial before the Customs Service and payment of liquidated duties. In the leading case recently issued by the United States Court of Customs and Patent Appeals, (now the United States Court for the Federal Circuit), the court succinctly stated:

Nevertheless, the legislative history of the Customs Courts Act of 1980 demonstrates that Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service.

*The United States v. Uniroyal, Inc.,* 687 F.2d 467, 471 ( [CCPA] 1982).

It is judicially apparent that where a litigant has access to this court under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach complying with all the relevant prerequisites thereto. It cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction under 1581(i)

. . . .

557 F.Supp. at 607.

The above interpretation of the *Uniroyal* decision is entirely correct. Importers argue, however, that the *Uniroyal* holding itself recognizes that the traditional avenue of protest and appeal under § 1581(a) need not be utilized if it does not provide an "effective" remedy, *supra,* or if "inadequate as a matter of due process." (687 F.2d at 475 Nies, J., concurring).

Importers assert that the § 1581(a) remedy is ineffective, as a matter of due process, in three well defined areas: (1) where a complaint raises a constitutional question, (2) where the Customs regulations have built unconscionable delay into the protest and review procedures, and (3) where procedures to safeguard the rights of the public are violated.

## A

In essence, the constitutional issue asserted by importers is that there is a denial of due process whenever an agency fails to follow either a statute or a regulation which has the force of law. "Unlawful actions" by the Government, in the importers' view, "are a direct violation of the Constitution." The importers cite no authority for their proposition nor propose any limitation, and we find the importers' thesis basically unsound. Every instance in which the Government fails to act in accordance with a statute or regulation does not raise a constitutional issue. Indeed, the purpose of judicial review in customs cases is to determine the correctness of governmental action. Thus, the "exception" to the holding of *Uniroyal* which the importers seek to create appears to us to encompass all such cases. An importer would need only to express a challenge, for example, to valuation which is involved here, in terms of a constitutional wrong. We entirely agree with the Court of International Trade that the traditional avenue of approach to the court under 28 U.S.C. § 1581(a) was not intended to be so easily circumvented, whereby it would become merely a matter of election by the litigant. By artful pleading alone a litigant would be able to change the entire statutory scheme Congress has

established. The different requirements of § 1581(a) and § 1581(i) with respect to standing (28 U.S.C. § 2631); statutes of limitation (28 U.S.C. § 2636); amendment of claims (28 U.S.C. § 2638); burden of proof (28 U.S.C. § 2639(a)(1)); and standards of appellate review (28 U.S.C. § 2640) would become optional.

The importers attempt to draw a parallel between the instant case and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in which an individual who had been deprived of a disability benefit without a hearing prior to the cancellation of benefits was allowed judicial review of the issue of whether such hearing was necessary as a matter of due process without going through a post-cancellation hearing prescribed by agency regulations. Contrary to the importers' view, the *Eldridge* case does not support their position. In *Eldridge,* the claimant did not seek to avoid the statutory jurisdiction requirements but to invoke the court's jurisdiction pursuant to the statute. Crucial to the *Eldridge* decision on the jurisdictional issue was the holding that the only mandatory jurisdictional requirement necessitated by the statute was a "final decision" by the agency and that this "nonwaivable jurisdictional element was satisfied." 424 U.S. at 329–30, 96 S.Ct. at 900.

Unlike *Eldridge*, importers here seek to avoid the jurisdictional prerequisites set up by the statute. The Customs Service may not waive the statutory requirements that a protest must be *filed* to prevent finality of assessments,[2] or that duties must be paid before commencing a civil action involving the protest.[3] These provisions would operate irrespective of a suit under 28 U.S.C.

---

**2.** 19 U.S.C. § 1514(a) provides in pertinent part:

> [D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—
>
> (1) the appraised value of merchandise;
>
> \* \* \* \* \* \*
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or a civil action contesting the denial of a protest, in whole or in

part is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 [28 U.S.C. §§ 2631 *et seq.*].

**3.** 28 U.S.C. § 2637(a) reads as follows:

> A civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade, only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced.

§ 1581(i). Moreover, had Air Parcel wished to avoid the financial distress in which it finds itself, judicial relief was available prior to importation under 19 U.S.C. § 1581(h), as discussed *infra*. Importers admittedly were aware prior to the importation of the merchandise that the basis for valuation was disputed and apparently proceeded to enter transactions placing themselves in a precarious position with knowledge of this risk. Their plight cannot be attributed to deficiencies in the statute.

That importers here could fashion a more desirable remedy does not make the remedy fashioned by Congress constitutionally inadequate. As stated in *Jerlian Watch Co. v. United States,* 597 F.2d 687, 692 (9th Cir. 1979), a case in which an importer sought relief in district court[4] to avoid the Customs Courts' jurisdictional prerequisite of payment of duty:

> Plaintiffs' allegations of financial impossibility, even if accepted as true, do not place them within the "adequate remedy" exception. The dispositive consideration in determining whether plaintiffs have an adequate remedy is the nature of the barrier and not its financial height. Any financial barrier is inherent in the system established by Congress, and must have been recognized by Congress when it enacted 19 U.S.C. § 1514(a). It is true that injunctive and declaratory relief is a more desirable remedy in plaintiffs' view, but "the mere fact that more desirable remedies are unavailable does not mean that existing remedies are inadequate." *J.C. Penney Co. v. U.S. Treasury Department,* 439 F.2d [63] at 68 [2 Cir.1971].

### B

■ Contrary to importers' argument, the Customs Service regulations have not built unconscionable delay into the protest procedure. Indeed, a protestor need not await a decision by the agency before filing suit. The regulations provide an accelerated procedure for reaching the court within 120 days. 19 CFR § 174.22(a)–(d). Upon the filing of a suit, the court has discretion to require exhaustion of administrative remedies, 28 U.S.C. § 2637(d), and importers' arguments that the usual requirement to exhaust administrative remedies should be waived would be relevant to the exercise of that discretion. However, importers not only failed to utilize the procedure for obtaining accelerated consideration of its protest but also resorted to additional review procedure, thereby further delaying a Customs Service decision. Thus, importers' argument that relief has been delayed for eighteen months because of the regulations, thereby making judicial review under 28 U.S.C. § 1581(a) deficient as a matter of due process, is wholly without foundation.

### C

■ Importers' final position under 28 U.S.C. § 1581(i) is that the Customs Service must follow its own regulations which are designed to protect the public. While importers devote a substantial portion of their brief to exposition of how the Customs Service violated established procedures, we do not find any relationship between the merits of this argument and the jurisdictional issue. There is no dispute that the issue of violation of a regulation can be raised in a protest and subsequent civil action.

The decision of the Court of International Trade holding that it lacked jurisdiction to entertain the importers' complaint under 28 U.S.C. § 1581(i) is, accordingly, affirmed.

### II

■ As an alternative basis for jurisdiction, importers rely on 28 U.S.C. § 1581(h). The requirements to invoke this provision are:

(1) judicial review must be sought *prior* to importation of goods;

(2) review must be sought of a ruling, a refusal to issue a ruling or a refusal to change such ruling;

(3) the ruling must relate to certain subject matter; and

---

4. As discussed in *United States v. Uniroyal, Inc.,* 687 F.2d 467, 475, n. 9 (Nies, J., concurring) enactment of 28 U.S.C. § 1581(i) transferred the subject matter jurisdiction of the district courts to the Court of International Trade.

(4) irreparable harm must be shown unless judicial review is obtained *prior to* importation.

The Court of International Trade was persuaded that the term "ruling" in § 1581(h) did not include a response to a request for internal advice. The court stated:

> Of paramount interest is defendants' argument relating to the type of ruling to which section 1581(h) applies. The ruling in issue, TAA # 10, is an internal advice ruling which is authorized under Customs regulations, 19 C.F.R. § 177.11. Defendants argue that Congress specifically exempts internal advice ruling from being subject to judicial review under section 1581(h). In support of its contention defendants cite directly a portion of the law's legislative history . . . . *"In determining the scope of the definition of a 'ruling,' the Committee does not intend to include 'internal advice' or a request for 'further review', both of which relate to completed import transactions.* (Emphasis supplied). H.R.Rep. No. 96–1235, *supra,* 46." The Court believes that the underscored legislative history is convincing.

557 F.Supp. at 608.

The Government argues that requests for internal advice can only be made with respect to goods which have been imported. It does appear that § 1581(h) was intended to provide an importer with review of a ruling contained in a "ruling letter" issued to him [19 CFR § 177.9(b)] which can only be obtained prior to importation of goods. The provisions appear to be parallel. However, we do not need to rule on this issue but merely note that the importers failed to utilize this procedure which detracts from their argument of hardship.

The purported basis for invoking § 1581(h) put forth by the importers is that the revocation of TAA # 10 affects future imports they plan to make. A similar argument was made and rejected in *Uniroyal,* where the court held, 687 F.2d at 472:

In addition, to the extent that Uniroyal's prayer for relief is directed to future importations of uppers and soles, Uniroyal has not demonstrated the "irreparable harm" Congress has required before the trial court can exercise jurisdiction over an appeal of a ruling prior to the importation of goods and the filing and denial of a protest. [Footnote omitted.]

Here, as well, importers have not demonstrated irreparable harm with respect to future imports. The evidence of harm on which they rely is the financial burden of past transactions. No showing of harm has been made with respect to future imports. Moreover, the importers are aware that the increased duty must be taken into account in future dealings with customers.

As a final matter, a § 1581(h) case would not provide relief for past transactions which are the principal subject matter of this complaint. Declaratory relief only is available. 28 U.S.C. § 2643(c)(4).[5]

Thus, importers have wholly failed to meet the requirements of § 1581(h).

## III

■ Finally, the importers claim that the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.,* (APA) gives the Court of International Trade "the right to fashion the appropriate remedy, without hindrance of the usual procedure, when there are Constitutional violations of the type and nature suffered by American Air." However, clear precedent exists that the APA is not a jurisdictional statute and does not confer jurisdiction on a court not already possessing it. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

Thus, the APA does not give an independent basis for finding jurisdiction in the Court of International Trade. Rather, 28 U.S.C. § 1581 is the jurisdictional statute which governs this case. As the importers have failed to establish jurisdiction under 28 U.S.C. § 1581 for the reasons recited

---

**5.** 28 U.S.C. § 2643(c)(4) reads:

In any civil action described in section 1581(h) of this title, the Court of Internation-

al Trade may only order the appropriate declaratory relief.

above, the decision of the Court of International Trade is *affirmed*.

AFFIRMED.