**718 FIFTH AVENUE CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Court No. 85–07–00964.

United States Court of International Trade.

June 21, 1990.

Rode & Qualey, Patrick D. Gill and Eleanore Kelly–Kobayashi, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C.; Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, and Mark S. Sochaczewsky, New York City, for defendant.

*Opinion*

AQUILINO, Judge:

This is a case of first impression under same-condition-drawback section 1313(j) of Title 19, U.S.C., which was added to the Tariff Act of 1930 by Pub.L. No. 96–609, § 201, 94 Stat. 3555, 3560 (1980). It arises from import and export of a cushion ruby weighing 18.42 carats and gold ring mounting embellished with pear-shape and round diamonds, together valued at $2,306,750.

I

The unusual background of this case is set forth in *718 Fifth Avenue Corporation v. United States*, 7 CIT 195, 1984 WL 3661 (1984). The parties have filed herein a stipulation of the facts in lieu of a trial which states, among other things:

2. That said merchandise ... was the subject of entry number 4701–82–606537–1 of May 11, 1982;

3. That the merchandise was exported from the United States on June 2, 1982, to Geneva, Switzerland, and entered that country;

4. That the ... merchandise ... was reimported under separate consumption entry numbers 4701–84–172280–6 of May 2, 1984, and 4701–84–172321–6 of May 4, 1984, ... and was exported on June 14, 1984, in the same condition as imported on May 11, 1982, and was not used within the United States before such exportation; ...

5. That in anticipation of the exportation on June 14, 1984, plaintiff filed a

claim for drawback which became drawback entry 4701–84–750799–9;

6. That plaintiff's claim for drawback in drawback entry 4701–84–750799–9 was in compliance with all rules and regulations prescribed by the Secretary of Treasury pursuant to 19 U.S.C. § 1313(k);

7. That on July 22, 1982, plaintiff filed a drawback entry, number 1001–82–714618, pursuant to the provisions of 19 U.S.C. § 1313(j) claiming drawback on the merchandise ... on the basis of an exportation which took place on June 2, 1982, which claim was subsequently denied;

8. That defendant maintains that the earlier drawback claim with respect to the exportation on June 2, 1982, was not in compliance with the rules and interim regulations then in effect. Plaintiff did not present the merchandise to the Customs Service for examination upon exportation nor was any waiver given[.]

The stipulation incorporates (per paragraph 11) "the pleadings and other papers filed in connection with this case". They show that, at the time of first entry on May 11, 1982, the ruby came in duty free but that, after first export to Switzerland on June 2, 1982, the U.S. Customs Service determined that the gem and its mounting should be considered an entirety and classified under TSUS item 740.15 at a duty rate of 9.9% *ad valorem*.[1] This decision led to assessment of $227,947.50 for the ruby in addition to $420.75 originally assessed on the mounting. Those duties have been paid and are now the subject of plaintiff's drawback claim.

The claim has arisen as follows: The plaintiff filed for drawback following the first export. It also requested "internal advice" from Customs as to conditions under which drawback would lie if denied on that first export.[2] The Service ruled that a drawback entry could not be perfected by means of a second exportation, asserting that same-condition drawback applies only to an initial exit. Customs then proceeded to deny drawback on the first export due to lack of prior notice and examination. The plaintiff did not protest that denial; rather, it brought an action challenging the earlier ruling. The Court of International Trade rendered the above-cited decision, concluding that it lacked subject-matter jurisdiction to issue a declaratory judgment in light of the facts and *American Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1551–52 (Fed.Cir.1983). Soon thereafter, on May 2, 1984, the plaintiff re-entered the ruby, duty-free; the mounting was reimported separately on May 4, 1984. To repeat paragraph 4 of the stipulation, *supra*, the merchandise then "was exported on June 14, 1984, in the same condition as imported on May 11, 1982, and was not used within the United States before such exportation".

Subject-matter jurisdiction is not at issue in this case, which has been brought pursuant to 28 U.S.C. § 1581(a).

## II

The facts are also not in dispute, and the case thus hinges on the law as applied to them. The starting point, of course, is the

**1.** The plaintiff interposed a protest to this determination which was now denied by Customs and which is now the subject of yet another action, CIT No. 84–02–00255.

**2.** In particular, the plaintiff asked whether drawback could be had absent prior notice and examination, and if not, whether any or all of three proposed alternatives could be adopted in lieu of prior notice and examination. Those alternatives were that

(1) the ruby and mounting be returned to the United States for entry under a temporary importation bond for examination by Customs;

(2) the ruby and mounting be returned to the United States under two separate consumption entries, after which they would be examined and exported, same condition drawback being allowed on both the prior and later importations/exportations;

(3) a Customs officer be sent to the present location of the merchandise in Switzerland, at the expense the claimant, and have the ruby and mounting examined on site.

U.S. Customs Service Internal Advice 215299 B, p. 2 (Feb. 25, 1983). None of them was accepted as "legally viable" by the Service. *Id.*

governing statute, and courts have held that

> the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *See, e.g., Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629–30 (Fed.Cir. 1989); *Moss Manufacturing Co. v. United States*, 13 CIT ——, ——, 714 F.Supp. 1223, 1227 (1989), *aff'd*, 896 F.2d 535 (Fed.Cir. 1990). The pertinent language of 19 U.S.C. § 1313(j) is as follows:

**Same condition drawback**

(1) If imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law because of its importation—

(A) is, before the close of the three-year period beginning on the date of importation—

(i) exported in the same condition as when imported, ... and

(B) is not used within the United States before such exportation ...;

then upon such exportation ... 99 per centum of the amount of each such duty, tax, and fee so paid shall be refunded as drawback.

### A

Plaintiff's position, according to its complaint [para. thirtieth], is that this statute "permits ... same condition drawback of the duties paid on an original importation of merchandise so long as the second exportation occurs within three years of the first importation and the other conditions and requirements of the statute and regulations are met". That is, the

> statute does not require that the second exportation prove the first exportation without change; the statute straightforwardly requires only that there be an

exportation within the three-year period. The first exportation is irrelevant and obviously is not at issue. What is relevant and is at issue is whether there is an exportation within the three-year period which is the subject of a valid drawback claim against the first importation.[3]

The defendant argues in response:

> ... As Customs Ruling No. 215299B sets out in detail, a second or third exportation of merchandise cannot be "related back" to a first exportation. Each exportation can relate only to the importation immediately preceding it.[4]

It also contends that statutes granting exemption from duties are to be construed strictly, and "any doubts are to be resolved in favor of the Government's construction imposing duty"[5], citing *Swan and Finch Company v. United States*, 190 U.S. 143, 23 S.Ct. 702, 47 L.Ed. 984 (1903); *Pelz-Greenstein Co. v. United States*, 17 CCPA 305, T.D. 43718 (1929); as well as *Romar Trading Co. v. United States*, 27 Cust.Ct. 34, 37, C.D. 1344 (1951) ("The right to recover drawback ... arises only when all of the provisions of the statute and the applicable and lawful regulations prescribed under its authority have been complied with").

Of course, section 1313(j) does not grant an "exemption" from duties, rather drawback, which the Service defines as "a refund or remission, in whole or in part, of a customs duty ... lawfully assessed or collected...." 19 C.F.R. § 191.2(a). And such a refund or remission is governed by that section, which is clear on its face: When duties are imposed on merchandise upon importation and that merchandise is exported in the ensuing three years in the same condition as imported and without having been used in this country, the importer is entitled to return of 99 percent of the duties paid.

The defendant admits that section 1313(j) "does not specifically restrict attempts to claim drawback by a series of importation/exportation cycles". Defendant's

---

**3.** Brief for Plaintiff, p. 13.

**4.** Defendant's Brief, p. 10.

**5.** *Id.* (footnote omitted).

Brief, p. 9. "The statute requires that the merchandise be exported within three years of the date it was imported and in the condition as when imported." *Id.* at 9–10. Nevertheless, Customs tied plaintiff's claim to the first export and thereby effectively reduced the three-year period of limitation adopted by Congress to three weeks.

There is no indication that such a result was intended. In adding subsection (j) to section 313 of the Tariff Act of 1930, Congress specifically addressed the inflexibility of the existing drawback provisions, which only allowed for return of the duties paid "on imported goods upon the exportation of articles manufactured or produced in the United States with the use of the imported goods ... [or] on imported merchandise exported because the goods do not conform to sample or specifications as ordered, or are shipped to the United States without the consent of the consignee." S.Rep. No. 999, 96th Cong., 2d Sess., p. 23 (1980). Congress expressed dissatisfaction with the scope of the statute, which "provides for drawback in very limited circumstances", and with the alternatives to drawback, which "all have substantial limitations associated with their use." *Id.* It was thus an intended consequence in extending the drawback law that the new subsection (j)

> would give U.S. firms more flexibility in meeting customer demands, without [their] having to pay nonrefundable duties on merchandise that is not used in the United States. It would be beneficial to U.S. exporters in such ways as ... giving maximum flexibility ... in order to meet deadlines or emergency orders. Importers would receive drawback in those instances in which the merchandise imported was not used, and they were unable to anticipate the need to export. Such would be the case when the importer discovers that there is little domestic demand for the imported product, that the merchandise cannot be disposed of commercially without financial loss, and that [it] is desirable to return the mer-

chandise to the foreign source or sell it in a foreign country. *Id.* at 24.

This legislative history indicates, as does the resultant enactment itself, that the condition of the merchandise upon exportation and the three-year period were the primary focus of Congress. Its concern as to merchandise condition is reflected, for example, in the provision enacted in 1980 as part of section 1313(j) that the

> performing of incidental operations (including, but not limited to, testing, cleaning, repacking, and inspecting) on the imported merchandise itself, not amounting to manufacture or production for drawback purposes under the preceding provisions of this section, shall not be treated as a use of that merchandise for purposes of applying paragraph (1)(B).[6]

On the other hand, the motives for importing/exporting and the nature of those pursuing them apparently were of little concern. *Cf., e.g.,* 16 Cust.Bull. 855, C.S.D. 82–93 (1982); 17 Cust.Bull. 723, C.S.D. 83–1 (1983).

Thus, the court concludes that 19 U.S.C. § 1313(j)(1), in the light of its plain language and underlying legislative history, neither mandates the approach espoused by Customs nor precludes that of the plaintiff.

### B

This conclusion does not end the analysis, however, for the decision of the Service in a case such as this is "presumed to be correct" and the "burden of proving otherwise ... rest[s] upon the party challenging such decision." 28 U.S.C. § 2639(a)(1). Here, that decision boils down to the point now pressed that, once the merchandise had been exported the first time (in 1982) "without giving Customs the opportunity to examine it, the ruby could not receive the benefit of drawback under 19 U.S.C. § 1313(j), even upon its subsequent reimportation and reexportation." Defendant's Reply Brief, p. 1.

Of course, at the moment of first export, the plaintiff did not know that any duties were to be assessed on the ruby, nor were

---

**6.** This subsection, originally numbered (2), is now (4) as a result of provisions added to 19 U.S.C. § 1313(j) by Congress after June 1984, the conclusive moment here.

"regulations governing the operational functions of same condition drawback" [7] in existence then. In any event, the plaintiff apparently appreciated the problem of lack of prior notice and examination and thereby suggested the alternatives quoted in note 2, *supra*. When they were rejected, and after the decision in *718 Fifth Avenue Corporation v. United States*, 7 CIT 195 (1984), the plaintiff re-entered the merchandise to accommodate inspection by Customs.

The defendant has now stipulated per paragraph 4, *supra*, that the merchandise "was exported on June 14, 1984, in the same condition as imported on May 11, 1982, and was not used within the United States before such exportation". Moreover, the stipulation [para. 6] states that the exportation "was in compliance with all rules and regulations prescribed by the Secretary of Treasury pursuant to 19 U.S.C. § 1313(k)". In other words, for the purpose of resolving this case, whatever procedural concerns once existed have been satisfied.

The defendant also argues, however, that the

primary reason why plaintiff cannot now claim drawback is that its failure to timely protest Custom's [*sic*] initial determination precludes it forever from contesting that decision, which denied same-condition drawback on the ruby at issue. That decision became final and conclusive on all persons including the United States under 19 U.S.C. § 1514.[8]

There is no dispute that this is true as to the first denial of drawback, but plaintiff's claim for drawback is not based on the first exportation; it is "completely unrelated to the first exportation." Reply Brief for Plaintiff, p. 2. Rather, the plaintiff timely protested the Service's second denial of drawback, which is the basis now of the court's jurisdiction.

### III

In view of the foregoing, the court concludes that the plaintiff has successfully borne its burden of persuasion on the points raised, and judgment will therefore enter in its favor for return of the duties, as permitted by law.

### JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the United States Customs Service reliquidate drawback entry number 4701–84–750799–9, refunding to the plaintiff duties plus interest, as provided by law.

---

7. U.S. Customs Service Internal Advice 215299 B, p. 1 (Feb. 25, 1983).

8. Defendant's Reply Brief, p. 1.