PPG INDUSTRIES, INC. and Cabot Corporation, Plaintiffs,

v.

UNITED STATES, Defendant,

Vitro Flex, S.A. and Cristales Inastillables de Mexico, S.A., and Hules Mexicanos, S.A., and Negro De Humo, Negromex, S.A., Defendant–Intervenors,

and

Landrillera Monterrey, S.A., and Laminados De Barra, S.A., Amici Curiae.

Court No. 87–11–01065.

United States Court of International Trade.

Aug. 25, 1988.

Stewart and Stewart, Eugene L. Stewart, Terence Stewart, David Scott Nance, and Lane S. Hurewitz, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Platte B. Moring, III, Washington, D.C., for defendant.

Brownstein, Zeidman and Schomer, Irwin P. Altschuler and David R. Amerine, Washington, D.C., for defendant-intervenors, Vitro Flex, et al.

O'Connor & Hannon, Andrew Jaxa–Debicki, Washington, D.C., for defendant-intervenors, Hules Mexicanos, et al.

Duncan, Allen and Mitchell, Leslie Alan Glick and John P. Williams, Washington, D.C., for amici curiae.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Defendant files this motion to dismiss for lack of jurisdiction based upon the following claims: (1) plaintiffs have filed their action pursuant to 28 U.S.C. § 1581(i) when the remedy provided under 28 U.S.C. § 1581(c) is manifestly adequate; (2) plaintiffs have also filed their action pursuant to 5 U.S.C. §§ 701–706 and 28 U.S.C. § 2201(a) which do not confer independent grants of jurisdiction upon this Court; (3) no real case or controversy exists; (4) plaintiffs appear to be seeking an advisory opinion; and (5) plaintiffs do not possess standing to institute this action. Defendant-intervenors and amici curiae support the motion while plaintiffs oppose it. Upon consideration and review of the motion and all relevant papers filed therein, the Court grants defendant's motion to dismiss this action.

## FACTS

PPG Industries, Inc. (PPG) and Cabot Corporation (Cabot), (hereinafter collectively referred to as plaintiffs) are United States producers of, *inter alia,* fabricated automotive glass and carbon black, respectively. Both of these products are also produced in Mexico and imported into the United States free of ordinary Customs duties.

The Mexican merchandise, though, is subject to countervailing duties pursuant to § 303(a)(2), as amended, 19 U.S.C. § 1303(a)(2), and § 701, as amended, 19 U.S.C. § 1671, of the Tariff Act of 1930 (the Act).

Section 1303(a)(2) requires that any non-dutiable goods entering the United States from a country not "under the Agreement", pursuant to § 1671, are subject to imposition of countervailing duties without the requirement of an injury determination from the International Trade Commission (ITC). "Under the Agreement" refers to a country which has acceded to the General Agreement on Tariffs and Trade, (GATT), or has entered into a substantially equivalent agreement with the United States. *See* 19 U.S.C. § 1671(b); *Cementos Anahuac del Golfo, S.A. v. United States,* —— CIT ——, 689 F.Supp. 1191 (1988); *appeal docketed,* No. 88–1476 (Fed.Cir. June 17, 1988).

On June 27, 1983, the United States Department of Commerce, International Trade Administration, (ITA), published a countervailing duty order, (CVD order), pursuant to § 1303, covering manufacturers, producers, or exporters of carbon black from Mexico. *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Carbon Black From Mexico,* 48 Fed.Reg. 29,564 (1983). No injury determination was required because Mexico was not a country "under the Agreement" at that time. The ITA conducted successive administrative reviews on this CVD order pursuant to section 751 of the Act, as amended, 19 U.S.C. § 1675 (751 review). The first 751 review covered the period of importation from April 8, 1983 to September 30, 1983. The second 751 review is still being conducted. It covers the period from October 1, 1983 through December 31, 1985. The third 751 review is also being conducted by the ITA. It covers the calendar year of 1986.

On January 14, 1985, the ITA published a CVD order pursuant to § 1303, covering the manufacturers, producers, or exporters of fabricated automotive glass from Mexico. *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Fabricated Automotive Glass From Mexico;* 50 Fed.Reg. 1906 (1985). Because Mexico was not a "country under the Agreement", the CVD order

was issued without an injury determination pursuant to § 1303. Successive 751 reviews of the CVD order were conducted by the ITA. The first 751 review covered the period of importation from October 24, 1984 through December 31, 1985. The ITA is in the process of conducting the second 751 review for the period of importation covering the calendar year 1986.

On August 24, 1986, Mexico acceded to the GATT. Shortly thereafter the Mexican government and various petitioners, whose Mexican goods were subject to CVD orders without the benefit of an injury determination, filed requests with the ITA to revoke the CVD orders covering those goods subject to the order. Since Mexico had become a member of the GATT, the petitioners argued, those products were now entitled to an injury determination before countervailing duties could be assessed and imposed. Because those injury determinations had not been conducted, the petitioners reasoned no countervailing duties could be imposed; the CVD orders were invalid; and, therefore, the CVD orders needed to be revoked. These requests were also renewed during the various ongoing proceedings of the 751 reviews.

PPG, during one of the 751 review proceedings, responded to the above arguments that neither the GATT nor the countervailing duty law requires an injury determination be issued on Mexican goods covered by an existent CVD order upon the accession of Mexico to the GATT. PPG further argued that Mexico's GATT accession did not activate a retroactive benefit of an injury determination to outstanding CVD orders. Revocation, PPG contended, was not warranted in this situation and would run contrary to U.S. law and the GATT. *Fabricated Automotive Glass From Mexico; Final Results of Countervailing Duty Administrative Review*, 51 Fed. Reg. 44,652, 44,654 (1986).

The ITA responded to this argument as follows:

> We are currently considering the issue of whether Mexico's accession to the GATT impinges on our authority to impose countervailing duties on duty-free

products from Mexico. Since Mexico's accession became effective on August 24, 1986, our decision will not affect entries covered by this review, which runs through December 31, 1985.

51 Fed Reg. at 44,655. This statement by the ITA was published in similar form in response to similar arguments raised in other 751 review proceedings covering other products from Mexico. *See Bricks From Mexico; Final Results of Countervailing Duty Administrative Review*, 51 Fed.Reg. 43,418, 43,420 (1986); *Portland Hydraulic Cement and Cement Clinker From Mexico; Final Results of Countervailing Duty Administrative Review*, 51 Fed.Reg. 44,500, 44,501 (1986).

On December 26, 1986, Gilbert Kaplan, Deputy Assistant Secretary of Import Administration, ITA, wrote a letter to Alan Holmer, General Counsel of the Office of the United States Trade Representative, (USTR), requesting a legal opinion on the issue of injury determinations being required retroactively on outstanding CVD orders upon the accession of Mexico to the GATT. Exhibit 1, Defendant's Motion to Dismiss, *PPG Industries, Inc. v. United States*, Court No. 87–11–01065. On May 28, 1987, the USTR responded to the request with an internal memorandum addressed to Ambassador Yeutter, U.S. Trade Representative, from Alan Homer, General Counsel of the USTR office. The memorandum recommends "the U.S. is under an international obligation to provide an injury test to duty-free Mexican merchandise covered by existing CVD orders." Collective Exhibit 12, Plaintiffs' Complaint.

On February 23, 1987, the ITA published a notice of initiation of its 751 review of the CVD order covering fabricated automotive glass for the importation period of January 1, 1986 through December 31, 1986. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 52 Fed. Reg. 5,479 (1987). On July 17, 1987, the ITA published a similar notice of initiation with respect to a CVD order covering carbon black from Mexico for the period January 1, 1986 through December 31, 1986. *Initiation of Antidumping and Counter-*

*vailing Duty Administrative Reviews*, 52 Fed.Reg. 27,036, 27,037 (1987).

On October 15, 1987, the ITA communicated with the ITC by letter from Gilbert B. Kaplan, Acting Assistant Secretary for Import Administration, U.S. Department of Commerce, to Susan Liebler, Chairperson, ITC. *See* Exhibit 12, Plaintiff's Complaint. It is the contents of this communication that is the focus of plaintiffs' claim. The letter is set forth, in full, as follows:

Dear Chairman [sic] Liebler:

I am writing to request that the International Trade Commission (ITC) conduct investigations into the occurrence of material injury, or threat thereof, from certain duty-free imports from Mexico. We have determined that Mexico's accession to the General Agreement on Tariffs and Trade (GATT), which became effective on August 24, 1986, entitles it to an affirmative injury determination prior to the levy of countervailing duties on duty-free merchandise entering the United States after August 24, 1986. This determination, arrived at following consultations with the Office of the United States Trade Representative (USTR), affects products currently covered by nine countervailing duty orders. The products covered are: (1) fabricated automotive glass; (2) bricks; (3) carbon black; (4) cement; (5) iron construction castings; (6) lime; (7) litharge; (8) polypropylene film; and, (9) toy balloons.

Attached for your review is a memorandum recently prepared by Alan Holmer, General Counsel at USTR. It concludes that the United States has an obligation, pursuant to Article VI of the GATT, to make an affirmative injury determination before countervailing duties may be levied on Mexican duty-free imports entered after August 24, 1986.

At the time the Mexican orders were issued, Mexico was not a member of the GATT and, therefore, was not entitled to an injury test under the applicable statutory provision, section 303(a)(2) of the Tariff Act of 1930, as amended. It has been our position since *Certain Fasteners from India; Final results of Administrative Review and Partial Revocation of Countervailing Duty Order*, 47 Fed.Reg. 44129 (October 6, 1982) and more recently in *Carbon Steel Wire Rod from Trinidad and Tobago; Preliminary Results of Administrative Review and Tentative Determination to Revoke Countervailing Duty Order*, 50 Fed.Reg. 19561 (May 9, 1985), that where applicable international obligations exist, Congress intended to subject outstanding countervailing duty orders to the injury requirements of section 303(a)(2). Therefore, we believe the United States is prohibited from levying countervailing duties on Mexican duty-free imports if there has not been an affirmative injury determination by the ITC. Moreover, in the absence of such a determination, we believe ITA is compelled by our international obligations and the requirements of U.S. law to give serious consideration to the revocation of any orders so affected. Revocation would of course mean that many domestic industries would be forced to incur the expense of bringing entirely new cases on these products and perhaps more importantly, it would eliminate any possibility of assessing countervailing duties on thousands of entries. Under these circumstances, we believe, as does USTR, that an injury test should be granted. We also believe that the ITC has several legal bases upon which to determine whether the requisite injury would occur should these orders be revoked. I have attached a memorandum prepared by my chief counsel's office outlining our views.

Over the past several months, I have been in frequent contact with your General Counsel's office concerning this issue. I am keenly aware of the practical difficulties, both for the Commission and the ITA, that my request raises. However, I welcome your suggestions and stand ready to work with the Commission to resolve the issues that confront us.

*Id.* (The Letter).

The Letter was transmitted from the ITA to the ITC on or around October 20, 1987, but was not placed in the public files of the

751 review proceedings until November 3, 1987. Plaintiffs filed this action on November 4, 1987.

Plaintiffs charge the letter constitutes a "determination" by the ITA. This determination, plaintiffs contend, was made without a hearing or without the chance to submit comments or briefs in any of the affected 751 reviews. Specifically plaintiffs contend:

30. The ITA's determination constitutes a rule within the meaning of 5 U.S.C. § 551(4). Before promulgating a rule, the ITA is required to follow the procedures enumerated in 5 U.S.C. § 553, which requires that the agency provide public notice of the proposed rule making and provide an opportunity for interested persons to submit written data, views or arguments. The agency shall give consideration to the comments presented.

31. As the ITA followed none of the required procedures, the ITA's determination was made without observance of the procedures required by law, and is thus unlawful within the meaning of 5 U.S.C. § 706(2)(D).

32. The ITA's determination constituted an aspect of a final determination within the context of an administrative review. The relevant statute, 19 U.S.C. § 1671b *et seq.*, requires that the ITA make a final determination only after publishing a preliminary determination and providing the parties to the review with an opportunity to submit briefs and participate in a hearing regarding the issue.

33. As the ITA followed none of the required procedures, the ITA's determination was made without observance to the procedures required by law, and is thus unlawful within the meaning of 5 U.S.C. § 706(2)(D).

34. Because the ITA did not follow the necessary procedures in making its determination, it had no authority to request the ITC to conduct an injury investigation of duty-free products from Mexico.

35. The ITA's determination that no countervailing duty can be imposed upon imports of duty-free products from Mexico entering the United States after August 24, 1986, without an affirmative determination of injury by the ITC, is contrary to law.

Plaintiffs' Complaint at 9–10.

## DISCUSSION

Defendant Government (defendant) moves to dismiss this action for lack of jurisdiction. Specifically, defendant claims because adequate remedies lie under 28 U.S.C. § 1581(c), plaintiffs have not sustained their burden of establishing sufficient grounds exist for bringing the action under 28 U.S.C. § 1581(i). In addition, defendant claims the two other statutes plaintiffs refer to for jurisdictional grounds, 5 U.S.C. §§ 701–706 and 28 U.S.C. § 2201(a), do not grant independent bases for jurisdiction upon the Court. Defendant also urges no real case or controversy exists at this time; any opinion on the merits by the Court would be advisory at best; and plaintiffs lack standing to institute the present action. The Court must first direct its attention to the jurisdictional arguments challenging the Court's ability to review the matter.

Plaintiffs, in their complaint, state their action is brought pursuant to 5 U.S.C. §§ 701–706, 28 U.S.C. § 1581(i)(2), and 28 U.S.C. § 2201(a). Defendant challenges plaintiffs' claimed jurisdiction basis arguing that neither 5 U.S.C. §§ 701–706 of the Administrative Procedure Act (APA) nor 28 U.S.C. § 2201(a), providing for federal courts to issue declaratory judgments, establish an independent grant of jurisdiction to the Court to review the subject matter of the action. Defendant stresses that these statutes must work in conjunction with 28 U.S.C. § 1581, which provides for the exclusive jurisdiction of this Court over specific types of civil actions.

 Defendant's points, supported by defendant-intervenors, are well taken. It has been noted by the Supreme Court that "the APA does not afford an implied grant of subject matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders,* 430 U.S. 99, 107, 97

S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Specifically, the Supreme Court observed that while 5 U.S.C. § 702 sets forth that affected persons have a right to judicial review of wrongful agency actions, "§ 703 suggests that this language was not intended as an independent jurisdictional foundation, since such judicial review is to proceed 'in a court specified by statute' or 'in a court of competent jurisdiction.'" *Id.* at 106 n. 6, 97 S.Ct. at 984 n. 6.

■ Furthermore, 28 U.S.C. § 2201(a) creates a right for any court of the United States to declare the rights of parties so seeking where the actual controversy is within the court's jurisdiction. Neither the APA under § 701 *et seq.* nor § 2201 are designed to grant an independent basis for jurisdiction to this Court. Rather, both sections provide for additional remedies where jurisdiction has already been confirmed by statute. *See First Nat. Bank of Scotia v. United States,* 530 F.Supp. 162, 167–68 (D.C. D.C. 1982), *aff'd,* 659 F.2d 1059 (2nd Cir.1981).

■ Plaintiffs allege the Court has jurisdiction under 28 U.S.C. § 1581(i) to review this action. It is established law, though, § 1581(i) jurisdiction may only be invoked where jurisdiction under another subsection of § 1581 is unavailable or the remedy provided under the other subsection is manifestly inadequate. *Miller & Co. v. United States,* 824 F.2d 961 (Fed.Cir.1987); *United States v. Uniroyal, Inc.,* 687 F.2d 467 (Fed. Cir.1982). In either circumstance, it is the burden of plaintiffs to establish their jurisdiction under § 1581(i). If a remedy exists under another subsection of § 1581, plaintiffs must show why the available remedy under that other subsection is manifestly inadequate. *Miller & Co.,* 824 F.2d at 963.

Defendant and defendant-intervenors claim plaintiffs have not met their burden in establishing the Court has jurisdiction under § 1581(i). To the contrary, argues defendant, a proper and adequate remedy lies under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516(b). Plaintiffs' challenge of a transmittal of a letter from the ITA to the ITC which did not constitute, or result in, any form of a "determination" is not a reviewable determination, argues defendant, and is only reviewable once the final determination encompassing this action has been issued presumably under § 1581(c).

■ The Court agrees with defendant. It would seem that an adequate remedy would lie under § 1581(c). Plaintiffs have not met their burden to establish that remedy is manifestly inadequate. *Miller & Co.,* 824 F.2d at 963.

Plaintiffs, in their opposition papers, devote much discussion to cases where the Court has found jurisdiction lies under § 1581(i). While the court recognizes the precedential value of these cases in situations germane to those cases, it is clear none of those fact patterns are apposite to the case at hand. Plaintiffs summarily conclude their discourse with a conclusory paragraph stating the facts of the enumerated cases are analogous to the instant action, and that the ITA "[h]aving failed to make this determination inside the administrative review process [establishes] the judicial review provisions of 28 U.S.C. § 1581(c) do not control." Plaintiff's [sic] Opposition to Defendant's Motion to Dismiss at 59. The Court disagrees.

The Court has jurisdiction, pursuant to 28 U.S.C. § 1581(c), over civil actions challenging judicially reviewable determinations set forth at 19 U.S.C. § 1516a. Section 1516a(a)(2) provides, in pertinent part:

(2) Review of determinations on record

(A) **In general.**—Within thirty days after—

(i) the date of publication in the Federal Register of—

(I) *notice of any determination* described in clause (ii), (iii), (iv), or (v) of subparagraph B, or

(II) *an antidumping or countervailing duty order* based upon any determination described in clause (i) of subparagraph (B), or

(ii) the date of mailing of a determination described in clause (vi) of subparagraph (B),

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within

thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.

**(B) Reviewable determinations.**—The determinations which may be contested under subparagraph (A) are as follows:

\* \* \* \* \* \*

**(iii)** A final determination, other than a determination reviewable under paragraph (1), by the administering authority or the Commission under section 1675 of this title.

19 U.S.C. § 1516(a)(2) (1987).

Plaintiffs contend § 1516a(a)(2)(B)(iii) is not the jurisdictional ground for its action because The Letter that was transmitted, and "determination" therein, was not a part of the administrative 751 review and could not be challenged as such. Plaintiffs also have described the possible harm they would incur in the following manner: "Insofar as the ITA's determination and action *could lead* to the revocation of the countervailing duty orders covering automotive glass and carbon black from Mexico, PPG and Cabot are persons aggrieved by agency action ..." Plaintiffs' Complaint at 2 (emphasis added).

Plaintiffs' reference to any injury incurred is the possibility the transmittal of The Letter "could lead" to action by the ITA or the ITC that might result in some financial harm or other detriment. These injurious actions would appear to be purely conjectural and would become part of the record reviewable by the Court when the 751 review results are completed and issued. Section 1581(c) provides an adequate remedy for any possible harm that might be incurred by plaintiff and provides a possible channel for plaintiff to challenge the ITA's action at issue if such action results in actionable harm to plaintiffs.

The transmittal of The Letter from the ITA to the ITC on October 15, 1987 was done within the context of a 751 review. The question whether or not the letter constitutes a determination is beyond the question of whether or not § 1581(c) provides an adequate remedy for plaintiffs. The question presumably could be raised under § 1581(c) when there is a final determination. The letter was entered into the record and any impropriety on behalf of the ITA is reviewable by the Court within any challenge to the final 751 review results determination.

### CONCLUSION

Accordingly, the Court finds it lacks jurisdiction to hear this action pursuant to § 1581(i) at this juncture of the proceedings. When the proceedings are ripe for judicial review, presumably § 1581(c) will provide plaintiffs with a proper remedy for the Court to consider on review. Since plaintiffs have not shown the remedy under § 1581(c) is manifestly inadequate, they have failed to establish standing to invoke the jurisdiction of the Court under § 1581(c). Defendant's motion to dismiss is granted.

The Court's order will be entered accordingly.