**BROTHER INDUSTRIES, LTD. and Brother International Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**NAKAJIMA ALL CO., LTD., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court Nos. 90–12–00644, 90–12–00647.**

United States Court of International Trade.

July 26, 1991.

Tanaka Ritger & Middleton, H. William Tanaka and Patrick F. O'Leary, Washington, D.C., for plaintiffs Brother Industries, Ltd. and Brother Intern. Corp.

McDermott, Will & Emery, R. Sarah Compton and David J. Levine, Washington, D.C., for plaintiff Nakajima All Co., Ltd.

Office of General Counsel, Lyn M. Schlitt, James A. Toupin and Stephen A. McLaughlin, Washington, D.C., for U.S. Intern. Trade Com'n.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Todd C. Fineberg, Washington, D.C., for intervenor-defendant Smith Corona Corp.

## OPINION & ORDER

AQUILINO, Judge:

These actions contest the *Final Scope Ruling; Portable Electric Typewriters From Japan*, 55 Fed.Reg. 47,358 (Nov. 13, 1990), of the International Trade Administration, U.S. Department of Commerce ("ITA") which has arisen out of an antidumping-duty order covering such typewriters and reported at 45 Fed.Reg. 30,618 (May 9, 1980).

### I

As indicated, the encaptioned party defendant in each action is the United States, with the complaints specifically encompassing not only the constituent ITA but also the U.S. International Trade Commission ("ITC"). Plaintiff Nakajima All Co., Ltd.'s complaint, for example, avers that it is a manufacturer in Japan of portable electric typewriters ("PETs") and of personal word processors ("PWPs") and that the ITA issued a preliminary determination "that the machines in question, including PWPs with text display and expanded memory, are presumptively within the scope of the PET Order", para. 15. The complaint then states:

16. In accordance with ... 19 U.S.C. § 1677j(e)(1)(C), because the Department found in the Preliminary that the "later-developed merchandise" incorporates a significant technological advance to an earlier product, the Department notified the I[TC] ... of the scope proceeding on July 27, 1990.

17. On August 10, 1990, the ITC advised the Department by letter, stating that the ITC acknowledged notification and that it did not believe that consultations between the Department and the ITC were necessary....

Whereupon the plaintiff asserts a second cause of action as follows:

32. The ITC's determination that consultations between the Department and the ITC in the underlying scope proceeding were not necessary was not supported by substantial evidence in the record and otherwise not in accordance with law.

33. In deciding that consultations were not necessary, the ITC ignored the significant change in circumstances posed by the prospective inclusion in the scope of the PET Order of PWPs, where the ITC's original determination that a domestic industry was injured by reason of imports of PETs from Japan did not contemplate imports of PWPs.

34. The ITC's failure to consider the change in circumstances posed by inclusion of PWPs in the PET Order and its decision that consultations with the Department were not necessary resulted in subjecting certain products of Nakajima to antidumping duties under the PET

Order, when such products otherwise are outside the scope of the PET Order.

The complaint of the Brother plaintiffs is to the same effect. Paragraph (d) of their prayer for relief requests "[r]emand to the ITC to reconsider its refusal to seek consultations with the ITA and to report its revised determination on the consultations issue".

Subject-matter jurisdiction of the court is pleaded to be pursuant to 28 U.S.C. § 1581(c). An answer signed by the Attorney General[1] on behalf of the defendant has been filed in each action. Neither pleading contests the respective averment on this issue.[2] Nonetheless, counsel for the ITC have now presented motions to dismiss

> any and all claims, and all prayers for relief, against the Commission contained in [the] complaint[s] in the above-captioned case[s] for lack of subject matter jurisdiction. The basis for subject matter jurisdiction alleged ... is 28 U.S.C. § 1581(c), which gives this Court exclusive jurisdiction over any civil action commenced under 19 U.S.C. § 1516a. The only provision of section 1516a cited by the plaintiff[s] as a basis for jurisdiction, however, is 1516a(a)(2)(B)(vi), which provides that a reviewable determination includes a "determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or anti-dumping or countervailing duty order."

The plaintiffs have filed papers in opposition to these motions, while the intervenor-defendant supports the ITC. Nakajima has also responded with a formal motion for leave to amend its complaint to add 28 U.S.C. § 1581(i) as an alternative basis of the court's jurisdiction. The Brother plaintiffs request the same relief in their papers in opposition to the ITC. The defendant and the intervenor-defendant oppose amendment.

The issues posited are clear. The ITC's motions appear to raise one of first impression, which is perhaps the reason for their unusual posture. That is, the motions sound as if made pursuant to CIT Rule 12(b)(1), but answers to the complaints had already been interposed on behalf of the defendant, which subsumes the Commission. And while Rule 12(c) provides for motions for judgment on the pleadings, those filed herein do not properly join issue on jurisdiction. Nevertheless, the court always has an obligation to satisfy itself on jurisdiction, including whether parties are necessarily before it. *E.g., Capron v. Van Noorden,* 6 U.S. (2 Cranch) 126, 127, 2 L.Ed. 229 (1804). The court is also cognizant of the general approach in actions such as these that the Department of Justice takes the lead in defending complaints about the ITA, with the office of the ITC general counsel's bearing the brunt of complaints directed at the Commission. That office trolls its responsibilities at bar, if any, by annotating, for example, each of its motions as follows:

> The Commission does not now move to amend the caption to make it a separate party-defendant, since it believes that no determination by it is properly before the Court in this case.

## II

■ Section 1581(c) of Title 28, U.S.C. states that the Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a. In these actions, the plaintiffs rely in particular on subsection (a)(2)(B)(vi) thereof[3], which provides for judicial review of a "determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing find-

---

**1.** Each answer also bears the name of an attorney-adviser in the Office of Chief Counsel for Import Administration, U.S. Department of Commerce and the name of an attorney with the ITC, together under the rubric "of counsel".

**2.** The same is essentially true of the answers interposed on behalf of the intervenor-defendant.

**3.** The Brother plaintiffs also refer to subsection (a)(2)(B)(ii).

ing of dumping or antidumping or counter-vailing duty order."

The parties in opposition take the position that, under that subsection, only a decision of the ITA is reviewable and that no basis exists to implead the ITC on its determination not to seek consultations with the administering authority.

### A

All of the parties rely on the statutory language and legislative history of 19 U.S.C. § 1677j, which was enacted as part of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107, to prevent circumvention of anti-dumping and countervailing duty orders. Subsection (d) states, in part:

Later developed merchandise

(1) In general

For purposes of determining whether merchandise developed after an investigation is initiated under this subtitle ... (hereafter in this paragraph referred to as the "later-developed merchandise") is within the scope of an outstanding anti-dumping or countervailing duty order issued under this title ... as a result of such investigation, the administering authority shall consider whether—

(A) the later-developed merchandise has the same general physical characteristics as the merchandise with respect to which the order was originally issued (hereafter in this paragraph referred to as the "earlier product"),

(B) the expectations of the ultimate purchasers of the later-developed merchandise are the same as for the earlier product,

(C) the ultimate use of the earlier product and the later-developed merchandise are the same,

(D) the later-developed merchandise is sold through the same channels of trade as the earlier product, and

(E) the later-developed merchandise is advertised and displayed in a manner similar to the earlier product.

The administering authority shall take into account any advice provided by the Commission under subsection (e) of this section before making a determination under this subparagraph.

The subsection (e) referred to provides:

Commission advice

(1) Notification to commission of proposed action

Before making a determination—

\* \* \* \* \* \*

(C) under subsection (d) of this section with respect to any later-developed merchandise which incorporates a significant technological advance or significant alteration of an earlier product,

with respect to any antidumping or countervailing duty order or finding as to which the Commission has made an affirmative injury determination, the administering authority shall notify the Commission of the proposed inclusion of such merchandise in such countervailing or antidumping order or finding. Notwithstanding any other provision of law, a decision by the administering authority regarding whether any merchandise is within a category for which notice is required under this paragraph is not subject to judicial review.

Under paragraph (2) of this subsection, once notified, the Commission "may request consultations with the administering authority regarding the inclusion. Upon the request of the Commission, the administering authority shall consult with the Commission and any such consultation shall be completed within 15 days after the date of the request." If after consultations the ITC believes "that a significant injury issue is presented by the proposed inclusion, the Commission may provide written advice to the administering authority as to whether the inclusion would be inconsistent with the affirmative determination of the Commission on which the order or finding is based." 19 U.S.C. § 1677j(e)(3).

### B

Having preliminarily determined that PWPs "incorporate a significant technological advance or significant alteration of an

earlier product"[4], the ITA notified the ITC pursuant to the statute of the proposed inclusion of such merchandise, whereupon the latter chose not to confer:

> In response to your notification regarding proposed inclusion of "later developed" portable electric typewriters within the scope of the existing antidumping order, please be advised that the Commission does not believe that consultations between Commerce and the Commission are necessary.[5]

The plaintiffs argue that this declination is reviewable under section 1516a as part of the ITA's final determination, to wit, implicit in the Commission's response is a conclusion that a significant injury issue was not presented and that this conclusion is subsumed in Commerce's ruling and therefore reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). The court does not disagree with this perspective, but the ITC's motions are actually posing another, subtle question.

### C

Historically, scope determinations have been the province of the ITA and have not entailed independent evaluation of material injury. *See, e.g., Smith Corona Corp. v. United States*, 13 CIT ——, 706 F.Supp. 908 (1989), *aff'd*, 915 F.2d 683 (Fed.Cir. 1990); *Diversified Products Corp. v. United States*, 6 CIT 155, 572 F.Supp. 883 (1983). The Brother plaintiffs contend that subsection (e) was enacted to close this injury "loophole".

It is true that Congress sought to "ensure that any anti-circumvention action taken is consistent with U.S. international obligations." H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 602 (1988). The stated "expectation", however, was "that findings by the ITC that the inclusion of the merchandise is inconsistent with the prior injury determination would be relatively unusual, since the anti-circumvention provisions are intended to address efforts to import the same class or kind of merchandise in slightly modified form and should typically fall within the ITC's prior finding of injury."[6]

Contrary to the Brother argument, statutory notification of the Commission is hardly the equivalent of a renewed determination of material injury. *See, e.g.*, Bello, Holmer and Tillman, *Anticircumvention Measures: Shifting the Gears of the Antidumping and Countervailing Duty Laws?*, 24 Int'l Law. 207, 216 (1990) ("unlike investigations where both agencies are decision-makers, in anticircumvention proceedings, Commerce has the decision-making authority and the ITC has only an advisory role"). Under section 1677j, the Commission is completely uninvolved unless called upon, and subsection (e) requires notice only if the ITA proposes to include later-developed products entailing significant advancement or alteration. Moreover, that subsection explicitly precludes judicial review of a decision to notify the ITC. If and when the ITA decides that merchandise is such as to give notification, then the Commission may call for consultations.

---

4. *Preliminary Scope Ruling; Portable Electric Typewriters From Japan*, 55 Fed.Reg. 32,107, 32,-116 (Aug. 7, 1990).

5. Letter from the ITC Acting Chairman to the Assistant Secretary for Import Administration (Aug. 10, 1990).

6. H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 602–03 (1988). Hence, notification, as subsequently required by subsection (e), was not a continuing topic of discussion. *See* Bello, Holmer and Tillman, *Anticircumvention Measures: Shifting the Gears of the Antidumping and Countervailing Duty Laws?*, 24 Int'l Law. 207, 213 (1990), and also *id.* at 214:

> Although there is a dearth of information in the legislative history as to how and why the ITC was included, those involved in the legislative process know that it entailed a concern about the GATT legality of the proposed anticircumvention measures. However, it is apparent that Congress intends the ITC's role in anticircumvention decisions to be limited. The Conference Report is replete with statements that the ITC should only intervene when there is a significant injury issue. In fact, the conferees expected that most cases would be handled through informal consultations and that written advice would be the exception, not the rule. These admonitions can only be understood in the context of the interface between Commerce's class or kind determination and the ITC's like product determination.

When requested, Congress "expect[ed] that in many cases, the relevant consultations c[ould] be handled informally, through a telephone call, or a meeting if more formal written discussions are necessary." Conf. Rep. No. 576 at 604. If, after conference, the ITC decides that a significant injury issue is presented, it may so advise the ITA. Even then, however, "resort to formal written advice w[ould] be the exception, not the rule." *Id.*

In the proceedings at bar, if the Commission had decided to consult with the ITA, and then to provide written advice, Commerce would have only needed to take that advice "into account". 19 U.S.C. § 1677j(d). It is the latter agency, therefore, which must justify action, if any, on such advice. As the congressional conferees recognized and in fact emphasized, subsection (d) was enacted to "clarify and codify current Commerce Department authority, which has been recognized by the courts. It is not intended, nor are any of the provisions of this section intended, to call into question past authority of the ... Department to make scope decisions." Conf.Rep. No. 576 at 601. The "reviewable determination" thus encompasses whether, or to what extent and why, the ITA acted upon ITC advice. While there is some language supportive of the plaintiffs in the conference report[7], the statute is too clear on its face to conclude that the Commission's reaction is separately reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). *Cf. Pope Products, Div. of Purex v. United States*, 15 CIT ——, ——, Slip Op. 91–50 at 16, 1991 WL 117814 (June 18, 1991) (presumption of review overcome if review precluded by Congress). Stated another way, whatever may have been said or reported as part of the legislative process cannot countermand a lucid result thereof.

On the other hand, this does not mean that the ITC response is beyond judicial review herein, only that it will be considered as an element of the ITA's record. *Cf. PPG Industries, Inc. v. United States,*

12 CIT 763, 769, 696 F.Supp. 650, 655 (1988) ("transmittal of a letter from the ITA to the ITC which did not constitute, or result in, any form of a 'determination' is not a reviewable determination"). This being the case, to the extent the ITC's motions seek a ruling on its obligation to defend the response, they can be, and therefore hereby are, granted, for the statute does not contemplate the Commission in court, at least in these actions.

### III

As indicated, the plaintiffs have also responded with motion(s) to amend their complaints to include 28 U.S.C. § 1581(i) as a jurisdictional predicate. While CIT Rule 15(a) provides that leave to amend "shall be freely given when justice so requires", one exception to this liberality is "futility of amendment". *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed.Cir.1989). Here the plaintiffs can only meet their burden of establishing that jurisdiction exists under subsection (i) when "another subsection of § 1581 is unavailable or the remedy provided under the other subsection is manifestly inadequate." *PPG Industries, Inc. v. United States*, 12 CIT at 769, 696 F.Supp. at 655, citing *Miller & Company v. United States*, 824 F.2d 961 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988), and *United States v. Uniroyal, Inc.*, 687 F.2d 467 (Fed.Cir.1982). Since there is no showing that the subject-matter jurisdiction afforded by section 1581(c) over these actions is manifestly inadequate, plaintiffs' motion(s) must be, and they hereby are, denied.

So ordered.

---

7. Conf.Rep. No. 576 states at page 604 that, if the "ITC provides written advice on which Commerce bases a scope determination, the ITC would be responsible for defending such advice in any relevant judicial proceeding." Of course, in the actions at hand, no such advice exists.