**The INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, the International Brotherhood of Electrical Workers, the International Union of Electronic, Electrical, Salaried Machine and Furniture Workers, the Industrial Union Department, AFL-CIO, and the United Steelworkers of America, Plaintiffs,**

**v.**

**The UNITED STATES, Defendant,**

**and**

**Orion Electric Co., Ltd., Goldstar Co., Ltd., Goldstar of America, Inc., Goldstar Electronics International, Inc., Goldstar Mexico, S.A. De C.V., Samsung Electron Devices Co., Ltd., Samsung Mexicana, S.A., Samsung Elec-** **tronics America, Inc., Sony Corporation, Sony Corporation of America, Mitsubishi Electric Corporation, Mitsubishi Electronics America, Inc., Mitsubishi Electronics Industries Canada Inc., Ltd., Matsushita Electric Industrial Co. Ltd., Hitachi, Ltd. and Sanyo Manufacturing Corporation, Intervenors–Defendants.**

**Court No. 91–04–00249.**

United States Court of
International Trade.

Aug. 14, 1992.

---

Collier, Shannon, Rill & Scott, Paul D. Cullen, Laurence J. Lasoff and Stephen A. Jones, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Vanessa P. Sciarra, and Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Robert J. Heilferty, Washington, D.C., of counsel, for defendant.

Reid & Priest, David A. Gantz and Elizabeth H. Lefebrve, for intervenor-defendant Orion Electric Co., Ltd.

Donovan Leisure, Rogovin, Huge & Schiller, Michael P. House and R. Will Planert, for intervenors-defendants Goldstar Co., Ltd., Goldstar of America, Inc., Goldstar Electronics Intern., Inc. and Goldstar Mexico, S.A. De C.V.

Akin, Gump, Hauer & Feld, L.L.P., Sukhan Kim, Warren E. Connelly and Robert W. Aulsebrook, for intervenors-defendants Samsung Electron Devices, Co., Ltd., Samsung Mexicana, S.A. and Samsung Electronics America, Inc.

Wilmer, Cutler & Pickering, Leonard M. Shambon and Rebecca Arbogast, for intervenors-defendants Sony Corp. and Sony Corp. of America.

Baker & McKenzie, Thomas P. Ondeck and Kevin O'Brien, for intervenors-defendants Mitsubishi Elec. Corp., Mitsubishi Electronics America, Inc. and Mitsubishi Electronics Industries Canada Inc.

Willkie Farr & Gallagher, William H. Barringer, James P. Durling and Daniel L.

Porter, for intervenor-defendant Matsushita Elec. Indus. Co. Ltd.

McDermott, Will & Emery, Carl W. Schwarz and David J. Levine, for intervenor-defendant Hitachi, Ltd.

Sharretts, Paley, Carter & Blauvelt, P.C., Gail T. Cumins and Ned H. Marshak, for intervenor-defendant Sanyo Mfg. Corp.

## OPINION

AQUILINO, Judge:

In this action the plaintiffs have interposed a motion for judgment on the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Color Picture Tubes from Canada, Japan, Republic of Korea & Singapore; Negative Final Determinations of Circumvention of Antidumping Duty Orders*, 56 Fed.Reg. 9,667 (March 7, 1991). They characterize the action as "the first ... that attempts to address the problem of diversion of a major component part covered by an antidumping order."

Jurisdiction of the court is pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c).

### I

Four such antidumping-duty orders were promulgated by the ITA on January 7, 1988, covering color television picture tubes ("CPTs") from Canada, Japan, the Republic of Korea and Singapore. *See* 53 Fed.Reg. 429 to 432. The orders define the merchandise as

cathode ray tubes suitable for use in the manufacture of color television receiver[s] or other color entertainment display devices intended for television viewing.

In addition, those governing such tubes imported from Canada, Japan and Singapore provide:

CPTs which are imported as incomplete television assemblies that contain a CPT as well as additional components are also included within the scope of this order unless both of the following criteria are met: (1) The CPT is "physically integrated" with other television receiver components in such a manner as to constitute one inseparable amalgam; and, (2) the CPT does not constitute a significant portion of the cost or value of the items being imported.[1]

The order for such merchandise from Korea contains similar language as well as the following provision:

CPTs imported as part of color television receiver kits or as part of incomplete television receiver assemblies that are subsequently assembled into a completed color television (CTV) by a related party are included within the scope of the existing order on complete and incomplete color television receivers from Korea ("CTV order") (40 FR 18336, April 30, 1984). Therefore, these CPTs are not included within the scope of this order.

These orders issued to counteract circumvention of existing antidumping-duty orders governing complete foreign color televisions. Thereafter the record indicates that the CPTs began to enter the United States via Mexico, following integration in that country into such receivers. The petitioning trade unions, plaintiffs herein, thereupon requested that the ITA investigate per the anticircumvention provisions of the Omnibus Trade and Competitiveness Act of 1988, § 781(b), 19 U.S.C. § 1677j(b). The agency granted the request and published notice of *Initiation of*

---

1. For the ITA considerations underlying these two criteria, see, for example, *Final Determination of Sales at Less Than Fair Value; Color Picture Tubes From Canada*, 52 Fed.Reg. 44,161, 44,162 (Nov. 18, 1987). The order in regard to Japan adds that

CPTs which are imported together with other parts as incomplete television assemblies whether shipped directly from Japan or through Mexico should be included in the scope of this order....

... CPTs which are shipped directly from Japan and imported together with other parts as television receiver kits (which contain all parts necessary for assembly into complete television receivers) are excluded from the scope of this order. However, CPTs which are shipped through Mexico and imported together with other parts as television receiver kits should be included in the scope of this order.

*Anti–Circumvention Inquiry on Anti-dumping Duty Orders on Color Picture Tubes From Canada A–122–605, et al.,* 55 Fed.Reg. 34,950 (Aug. 27, 1990). According to the published preliminary results of this inquiry, the ITA sought information from some 21 companies. Based on the record developed and the 1988 act, the agency reached negative preliminary and final determinations as follows:

> After consideration of the criteria of section 781(b) ..., we preliminarily determine that no circumvention of the anti-dumping duty orders on CPTs is occurring. We base this determination on our conclusions that CTVs imported from Mexico into the United States are not of the same class or kind as the CPTs incorporated in those CTVs and that the difference between the value of CTVs containing CPTs originating in the order countries and the value of the CPTs is not small.

*Color Picture Tubes From Canada, Japan, the Republic of Korea, and Singapore; Negative Preliminary Determinations of Circumvention of Antidumping Duty Orders,* 55 Fed.Reg. 52,066, 52,069 (Dec. 19, 1990). Subsequently:

> After a full examination of the comments received, we determine that no circumvention of the antidumping duty orders is occurring. These negative determinations of circumvention are in accordance with 19 U.S.C. 1677j and 19 CFR 353.29.

56 Fed.Reg. at 9,672.

The comments referred to included a plea by the petitioners that the ITA apply the "full value" of the class or kind of merchandise defined in the antidumping-duty orders, namely, "incomplete television assemblies that contain a CPT", and find the difference between that value and a complete color television to be "small" within the meaning of the 1988 act. *See id.* at 9,668 (*Comment 1*). The agency responded that the statute

> directs the Department to determine the difference between the value of the merchandise imported into the third country and the value of merchandise completed

or assembled in that country.... A circumvention determination is based on the fact pattern that exists at the time of the inquiries. Therefore, in each inquiry and for each respondent, we calculated the difference in value based upon the actual value of the picture tube imported into Mexico and the actual value of the CTV imported into the United States during the period of inquiry.

... [T]he full value of a CPT can only be the value of the picture tube itself. The references to any additional parts in the CPT orders are for definitional purposes only. These references are there to help determine whether the CPT component of the merchandise should fall within a CPT or CTV order. We have concluded that the value of the CPT should be based upon the value of the picture tube itself since only the value of the picture tube component, not any additional parts, is subject to an anti-dumping duty when entering the commerce of the United States.

*Id.* In response to comments by the petitioners to the effect that the CTVs imported from Mexico are of the same class or kind of merchandise as that covered by the CPT orders, the ITA added that it had

> clarified the scope of the orders on CTVs and CPTs ... to address instances of circumvention while avoiding overlap of such orders. We have gone to great lengths to ensure the integrity of the orders on CPTs and CTVs by capturing those imported articles which would fall between the cracks of narrowly-defined CPT and CTV orders. However, the clarification of these orders does not mean that we have collapsed two separate antidumping duty orders with different applicable rates into one. The two-pronged test set forth in the CPT orders was designed to distinguish CPTs from CTVs. The Department's direct language was crafted to determine which merchandise would be subject to the two-pronged test. In the Canada, Japan, and Singapore orders, it was clearly stated that the test is applicable to "incomplete color television assemblies" ... to determine whether such assemblies should be

included in either the CTV or CPT order. Complete CTVs, however, were not intended to be subject to such a test since we previously determined that "a completed CTV is not within the same class or kind of merchandise being investigated [CPTs]" (Color Picture Tubes from Korea, 52 FR 44186, November 18, 1987). This reasoning applies to the other three CPT orders as well. In short, completed color television receivers are not the imported articles envisioned by the CPT orders.

*Id.* at 9,669.

## II

Clearly, there is support for the conclusion that completed color television receivers are not the imported articles envisioned by the CPT orders. Moreover, while the annals on dumping of CTVs are extensive [2], an antidumping-duty order covering that phenomenon via Mexico does not appear among them.

■ Although forced to concede the non-existence of such an order [3], the plaintiffs still come now, continuing to claim "diversion" and "evasion" and praying for court intervention on their behalf. While such appellations [4] may be apposite in light of the background of this action, judicial relief is permissible only upon a showing that the ITA's final negative determination is not supported by substantial evidence on the record or is not otherwise in accordance with law.

**2.** *See, e.g., Antidumping—Television receiving sets, monochrome and color, from Japan,* T.D. 71–76, 5 Cust. B. & Dec. 151 (1971), and the dozens of subsequent reported administrative and court decisions related thereto.

**3.** *See, e.g.,* Plaintiffs' Reply, pp. 3–4, 17; Transcript of oral argument on July 30, 1992 ("Tr."), p. 15.

**4.** From the onset of these proceedings, the petitioner-plaintiffs have sought to characterize their focus as "diversion" (or "evasion") in contrast to "circumvention", the choice of term for the heading to section 1677j. Their petition [Record Document 26], for example, is entitled "Request to Investigate the Diversion of U.S. Imports of Color Picture Tubes through Mexico". They attempt to distinguish the two terms as follows:

## A

As indicated, the agency relied on 19 U.S.C. § 1677j(b), which governs merchandise completed or assembled in other foreign countries by providing that, (1) in general, if (A) it is of the same class or kind as merchandise subject to an antidumping-duty order,

(B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which—

(i) is subject to such order ...,

(C) the difference between the value of such imported merchandise and the value of the merchandise described in subparagraph (B) is small, and

(D) the administering authority determines that action is appropriate under this paragraph to prevent evasion of such order ...,

the administering authority ... may include such imported merchandise within the scope of such order ... at any time such order ... is in effect.

**(2) Factors to consider**

In determining whether to include merchandise assembled or completed in a foreign country in a[n] ... antidumping duty order ... under paragraph (1), the administering authority shall take into account such factors as—

(A) the pattern of trade,

... "[C]ircumvention["] ... involves the avoidance of duties on a covered article by shipping *uncovered* parts and components for assembly into a covered article prior to sale to the ultimate consumer.
... "[D]iversion" involves the attempt to avoid the imposition of antidumping or countervailing duties on a *covered* article by shipping the *covered* article itself to a third country where it undergoes further processing or assembly before reexport to the United States. Thus, "circumvention" and "diversion" address different problems, with different commercial and legal implications.
Plaintiffs' Memorandum, p. 5 (emphasis in original). *See also id.* at 7; Tr. at 9. Though such transactions, at least as perceived by plaintiffs' able counsel, may be "somewhat different" [Tr. at 9], the court is not convinced that this action hinges on perceptual contradistinction.

(B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is related to the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and

(C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the issuance of such order....

With regard to these factors, the agency found the following pattern of trade to exist for the period January 1986 through June 1990:

... CPT shipments to the United States fell from 2 million units in 1986 to 190,-000 units in 1989. At the same time, CPT shipments to Mexico increased from 700,000 units in 1986 to 1.8 million units in 1989. Concurrently, CTV shipments from Mexico to the United States increased from 20,000 units in 1986 to 2 million units in 1989.

Furthermore, in conjunction with the above changes in the CPT pattern of trade, a shift in the pattern of trade for Mexican CTVs has also occurred over the past four years. The percentage of CPTs imported into Mexico and then incorporated into CTVs exported to the United States has increased. Although the exact number of CPTs from the four countries which are incorporated into Mexican CTVs and sold in the United States cannot be determined from the information provided to the Department, the ratio of Mexican CTV shipments to the United States to imports of CPTs into Mexico from the four countries increased from 3 percent to almost 100 percent during those four years.

55 Fed.Reg. at 52,069. The ITA's inquiry led it to conclude that less than 40 percent of the CPTs purchased from the subject countries were from related CPT producers but also that the above increase of CPT imports into Mexico from those countries amounted to almost 160 percent. *See id.* Nonetheless, its preliminary determination continued:

The Department cannot find circumvention based on these factors alone. Rather, the factors are intended to assist the Department in determining whether to include the merchandise within the scope of an existing antidumping duty order in those situations where the merchandise is of the same class or kind and the difference in value is small.

*Id.* And the agency abided by this position on final analysis, *supra.*

## B

■ As adopted, the 1988 act does not require the ITA to afford relief of the kind the plaintiffs now seek even if the market factors as well as those set forth in subsection (b)(1) are all supportive. In short, Congress has provided the agency with broad discretion[5], but not so as to render affirmative determinations where those factors are not all supportive, which is the case here.

■ Thus, on the record developed this court is unable to conclude that the ITA's approach was not in accordance with the 1988 act. It is clear that the CPT orders, the purpose of which is to counteract circumvention of the CTV orders, were carefully drawn to differentiate CPTs from CTVs[6] and also that no such CTV order is or has been aimed at Mexico.

Nevertheless, the plaintiffs now argue that the precise CPT definition in the 1988 orders, namely, "cathode ray tubes suitable for use in the manufacture of color television receivers or other color entertain-

5. In doing so, Congress also "sought to 'ensure that any anti-circumvention action taken is consistent with U.S. international obligations.'" *Brother Industries, Ltd. v. United States,* 15 CIT ——, ——, 769 F.Supp. 374, 378 (1991), quoting H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 602 (1988).

6. It should be noted in this regard that, while a legislative report contains a reference to the same "general" class or kind of merchandise, that adjective did not survive codification of 19 U.S.C. § 1677j(b)(1)(A). *Compare* S.Rep. No. 71, 100th Cong., 1st Sess. 99 (1987) *with* 19 U.S.C. § 1677j(d) (Later-developed merchandise) *and Diversified Products Corp. v. United States,* 6 CIT 155, 572 F.Supp. 883 (1983).

ment display devices intended for television viewing" could be held to apply herein in that those tubes do not undergo substantial transformation in Mexico, merely mechanical and electrical integration. Furthermore, they emphasize the language of the order in regard to Korea, *supra*, contending that it specifically includes all CPTs so long as they are not incorporated in CTVs covered by that order. Plaintiffs' Reply, p. 15 n. 5. *See also* Tr. at 7.

■ Whatever the merits of such argumentation, the 1988 act requires that any differences in value be "small" for goods for which antidumping encompassment is sought. In this action, as indicated above, the ITA determined that the differences are

clearly not small. The differences in value for all respondents ranged from 55 to 70 percent (the single non-responding company was given a best information otherwise available (BIA) difference of 55 percent based on petitioners' information). These differences in value percentages indicate that for all respondents, the non-CPT value of the CTV exceeds the value of the picture tube itself. Given the facts of this case, we cannot consider these differences in value to be "small."

56 Fed.Reg. at 9,669.

There is substantial evidence on the record in support of this determination. Courts continue to define this requisite quantum as

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion ... [It] is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

*Iwatsu Electric Co. v. United States*, 15 CIT ——, ——, 758 F.Supp. 1506, 1509 (1991), quoting *Matsushita Electric Indus.*

*Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir.1984), quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951), and *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966).

■ Nonetheless, the plaintiffs press the provision of the 1988 orders that the CPTs "constitute a significant portion of the cost or value of the items being imported" as an alternative ground for relief. According to the record, this condition also appears to be met but not the second criterion of those orders that the CPTs not be physically integrated with other television receiver components in such a manner as to constitute one inseparable amalgam, which apparently properly describes the challenged merchandise from Mexico. In sum, those goods do not satisfy the predicate of the two criteria, namely, "imported as incomplete television assemblies".

## C

■ As an alternative legal theory in the aftermath of the ITA's negative preliminary determination, the plaintiffs have taken the position that, since the CPT orders predate the 1988 act, it cannot undermine them. They attempt to rely on *Mitsubishi Electric Corp. v. United States*, 898 F.2d 1577 (Fed.Cir.1990), to the effect that its substantive provisions "must yield to the provisions of pre-existing antidumping orders where those statutory provisions would otherwise circumscribe relief established in earlier orders." Plaintiffs' Reply, p. 19.

In that case, the ITA had determined to include within an antidumping-duty order not only cellular mobile telephones from Japan but also subassemblies thereof[7], which were defined as "any completed or partially completed circuit modules, the value of which is equal to or greater than five dollars, and which are dedicated exclusively for use in CMT transceivers or control

---

7. *See Antidumping Duty Order: Cellular Mobile Telephones and Subassemblies From Japan*, 50

Fed.Reg. 51,724 (Dec. 19, 1985).

units." *Cellular Mobile Telephones and Subassemblies From Japan; Final Determination of Sales at Less Than Fair Value*, 50 Fed.Reg. 45,447, 45,448 (Oct. 31, 1985). On judicial review, the plaintiff-appellant Japanese manufacturers challenged the ITA's decision to include subassemblies, particularly at a five-dollar cutoff. That choice was sustained by both the Court of International Trade, 12 CIT 1025, 700 F.Supp. 538 (1988), and the Court of Appeals. By the time the matter had reached the latter forum, the 1988 act had become law, whereupon the appellants also challenged the selected dollar cutoff on the basis of the "small" difference-in-value standard of 19 U.S.C. § 1677j(b)(1)(C). The court held the new statute had no applicability to the case and shed no

> light on the validity of the Administration's decision under an earlier statute to except from an antidumping order only components valued at less than five dollars.
>
> The determination of the applicable scope of an antidumping order that will be effective to remedy the dumping that the Administration has found lies largely in the Administration's discretion.... That discretion must be exercised in light of all the facts before the Administration and must reflect that agency's judgment regarding the scope and form of an order that will best effectuate the purpose of the antidumping laws and the violation found. Considering all the circumstances, we cannot say that the Administration abused its discretion or acted contrary to the record in concluding that the antidumping order should cover all subassemblies valued at five dollars or more.

898 F.2d at 1582–83 (citation omitted).

In its final determination herein, the ITA took the position that this decision had no bearing [8]. However, during oral argument counsel for the defendant conceded that that position was "a little too strong":

> ... [T]he Commerce Department's position clearly is that the 1988 Act provides them with one avenue for redressing this type of alleged injury. There is nothing in the Act to suggest that any of the inherent powers that Commerce exercised prior to the Act had been taken away from the agency pursuant to that Act.

Tr. at 38. Be that as it may, and whatever the factual similarities then and now, the courts in *Mitsubishi* recognized that grant of relief of the kind the plaintiffs seek has rested, and continues to lie, as a matter of law largely in the ITA's discretion.

### III

On the law and the record before this court, the final determination of the ITA not to make color picture tubes integrated into color televisions in Mexico before importation into the United States subject to the 1988 orders governing dumping of such tubes from Canada, Japan, the Republic of Korea and Singapore must be affirmed, and this action must therefore be dismissed.

Judgment will enter accordingly.

### JUDGMENT

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that plaintiffs' motion for judgment on the agency record be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

---

**8.** *See* 56 Fed.Reg. at 9,670.